[L. A. No. 6462. In Bank.—March 21, 1921.]

## TOMBOY GOLD AND COPPER COMPANY (a Corporation), Appellant, v. D. O. MARKS et al., Respondents.

[1] APPEAL—JUDGMENT—CONSTRUCTION OF FINDINGS.—The findings of a trial court must be liberally construed in support of the judgment.

[2] SALE—REPUDIATION BY VENDEE—TENDER OF PROPERTY BY VENDOR UNNECESSARY.—Where a vendee under a contract for the purchase of specific personal property the day after the making of the contract informed the vendor that it did not want the property and demanded the return of the money paid on account thereof, the vendor was not called upon to make any tender of the property, in the absence of a retraction of the refusal, in order to avoid a default on its part in the matter.

[3] ID.—RECOVERY OF MONEY PAID—MUTUAL RESCISSION ESSENTIAL.—In the absence of a mutual rescission of a contract for the sale of specific personal property, there can be no recovery of money paid on account of the purchase price by the vendee, where the vendee without lawful right refuses to go on with the contract and the vendor is not in default.

[4] ID.—REPUDIATION BY VENDEE—SALE BY VENDOR TO THIRD PERSON —WANT OF MUTUAL RESCISSION.—Where a vendee under a contract

for the purchase of specific personal property without lawful cause refuses to go on with the contract by accepting the property and paying the balance of the purchase price, the sale of the property by the vendor to another vendee within a month after the final and definite repudiation of the contract by the first vendee cannot be taken as a consent to rescission on the part of the vendor entitling the vendee to the return of the money paid on account of the purchase.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. L. Burns and Hocker & Austin for Appellant.

Wm. L. Jarrott and James S. Jarrott for Respondents.

ANGELLOTTI, C. J.—This is an action for five hundred dollars alleged to have been had and received by defendants for the use of plaintiff. Judgment went for defendants, and plaintiff appeals upon the judgment-roll alone. The claim is that the findings of the trial court do not support the judgment, and that upon such findings judgment should have been given for the plaintiff.

As to the defendant D. O. Marks, referred to in the answer as the president of defendant corporation, it is clear that the findings fully support the judgment in his favor.

As to plaintiff and defendant corporation, the findings are, in accord with affirmative allegations of defendants' answer, substantially as follows: On December 12, 1916, plaintiff agreed with defendant corporation to purchase from the latter a milling-machine known as the Marks Pulverizer for $1,625, paying to the latter five hundred dollars in cash on account thereof, and agreeing to pay the balance of $1,125 on the delivery of the machine, which delivery was to be made on or before December 18, 1916. The machine was one used for the reduction of rock. "Defendant corporation did not manufacture said machine, but assembled it from constituent parts, which, according to its practice, it purchased ordinarily, after the order for the machine. . . . Plaintiff selected the machine from a demonstrating machine at the place of business of the defendant corporation. At that time said defendant corporation had

just one machine like the demonstrating machine, which it could assemble and deliver. Other deliveries could be secured by the defendant corporation from the manufacturer in not less than sixty days.'' On December 13, 1916, the day after the agreement for the sale, ''the plaintiff concluding that he [it] did not want the machine, believing that it would not serve plaintiff's purpose, so informed the defendant corporation, and demanded back said sum of five hundred dollars. The defendant corporation declined to repay said sum. The defendant corporation within a month thereafter sold the machine for the same price that the plaintiff had agreed to pay.''

[1] It is a thoroughly well-settled rule that the findings of a trial court must be liberally construed in support of the judgment given. So construed, we are satisfied that they must be held to mean, as is apparently conceded by counsel for both parties in their briefs, that the plaintiff absolutely refused to complete its purchase, and by its notice and demand on December 13, 1916, finally renounced and repudiated the contract. It was substantially alleged in the answer that on December 18, 1916, defendant corporation notified plaintiff that the machine was ready for delivery and that plaintiff then refused to receive the same, but the court did not specifically find on this allegation. However, because of the construction that must be given to the findings made in view of the judgment, the absence of such a finding is immaterial. [2] If on December 13th plaintiff definitely and finally refused to go on with the contract on its part, defendant corporation was not called upon to make any such tender, in the absence of a retraction of the refusal, in order to avoid a default on its part in the matter.

The case then, as presented by the findings, is simply that of a vendee on a contract for the purchase of specific personal property, who, without lawful cause, finally refuses to go on with his contract by accepting the property and paying the balance of the purchase price, seeking to recover from the vendor, who is in no way in default, the money paid by him to such vendor on the contract for purchase, on the theory of an implied promise to repay the same. This is the exact situation, unless the mere fact that within a month after plaintiff's renunciation of the contract defendant corporation sold the personal property to another pur-

chaser compels the conclusion that said defendant acquiesced in and agreed to plaintiff's attempted rescission, thereby accomplishing a rescission of the contract by mutual consent. In the latter event plaintiff would, of course, be entitled to be repaid the money it had paid on account.

[3] In the absence of a mutual rescission there can be no recovery by the vendee under such circumstances. No rule is more firmly settled with relation to contracts for purchase, whether concerning real or personal property, than that to the effect that a vendee, who without lawful right refuses to go on with his contract, cannot recover from a vendor not in default who is ready and willing to proceed and fulfill all his obligations, all or any of the money that he had paid to the vendor in accord with the terms of the agreement. This rule has been uniformly applied in California. It was declared in both opinions in *Glock* v. *Howard,* 123 Cal. 1, 10, 19, 20, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], the opinion of Mr. Justice Henshaw saying that in such a case the vendor, "still resting upon the contract, . . . may remain inactive, yet retain to his own use the moneys paid by the vendee; so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages," and the opinion of Mr. Justice Harrison declaring it to be the law of the state that "the vendee, who was himself in default in the payment of a portion of the money, could not against the will of the vendor repudiate the contract and recover the portion already paid." Many cases might be cited in which this rule has been applied, but the rule is not disputed, and it is plain that plaintiff has no right of recovery here except upon the theory of mutual abandonment and rescission. Upon the facts of this case there is no other possible foundation for a right of recovery on the part of plaintiff.

[4] The single question presented, then, is whether the sale of the machine to another vendee by defendant corporation within a month after the final and definite repudiation of its contract by plaintiff must be taken as a consent to rescission on the part of defendant corporation. We think this question was squarely decided against the contention of plaintiff in *Rayfield* v. *Van Meter,* 120 Cal. 416, [52 Pac. 666]. In that case the defendant, in an action to recover

the property brought by the vendor against the vendee who
refused payment and also refused to restore the property,
sought by cross-complaint filed after plaintiff had obtained
possession of the property, by process of claim and delivery,
and had sold all of the same to others, to recover the money
paid by him on the contract less such compensation to plain-
tiff for the use of the goods as justice might require. This
relief was granted by the trial court, and the judgment
was here reversed. It was held that the vendee, having
without lawful justification repudiated any further obliga-
tion under the contract, by his acts "the *vinculum juris*
arising from the contract was broken, and there was nothing
which plaintiff needed to rescind." The court then declar-
ing that a buyer who, without lawful excuse, refuses to go
forward with his contract is not entitled to recover back
money paid on account thereof, and that the rule applies
to agreements for sale of personalty as well as realty, said:
"It is immaterial that plaintiff sold the goods. In *Ketcham*
v. *Evertson,* 13 Johns. 359, [7 Am. Dec. 384], an action for
money paid on a contract for the conveyance of land, it was
justly and forcibly remarked: 'To say that the subsequent
sale of the land gives a right to the plaintiff to recover
back the money paid on the contract would, in effect, be
saying that the defendant could never sell it without sub-
jecting himself to an action by the plaintiffs. Why should
he not sell? The plaintiffs renounced the contract and per-
emptorily refused to fulfill it; it was vain, therefore, to
keep the land for them. The plaintiffs cannot by their own
wrongful act impose upon the defendant the necessity of
retaining property which his exigencies may require him to
sell. This would be most unreasonable and unjust, and is
not sanctioned by any principle of law.' These views are
equally appropriate to a case of sale of chattels." The
court then distinguished *Miller* v. *Steen,* 30 Cal. 402, [89
Am. Dec. 124], relied on by plaintiff, showed that section
1749 of the Civil Code had no application under the circum-
stances, and also that no ground for relief in equity ap-
peared. The decision was approved in *Liver* v. *Mills,* 155
Cal. 459, 463, [101 Pac. 299], where it was substantially
said that a distinct and unequivocal repudiation of his con-
tract by the vendee relieves the vendor "from all obliga-
tion to perform on his part," and that "in the face of a

repudiation of the contract by respondent *they were not bound to rescind, but were at liberty to treat the right of purchase as ended and to retake the property,"* being entitled to such possession as the owners thereof. (Italics are ours.) The theory of the decision is that the vendor in such a case has the right if he so elects to regard the rights of the purchaser under the contract as ended solely by the purchaser's unlawful repudiation thereof, and that in so far as he is concerned there is nothing to rescind. He may treat such rights as ended solely by the default of the vendee, retaining the money paid him by the vendee thereunder. (See *Oursler* v. *Thacher*, 152 Cal. 739, [93 Pac. 1007].) In such a situation, the mere subsequent sale of his own property by the vendor is, of course, entirely immaterial on the question of consent by him to a rescission.

The decision in *Reyfield* v. *Van Meter, supra,* is in accord with the rule generally prevailing in other states. (See 27 Ruling Case Law, 624.) The opinion in *Sanders* v. *Brock,* 230 Pa. St. 609, [35 L. R. A. (N. S.) 532, 79 Atl. 772], which, like this, was an action by the vendee in default for money paid on such a contract, the vendor having within a very short time resold the property for a larger sum than that fixed by the agreement, contains an exceedingly clear discussion of the principles applicable, entirely in line with our own decisions. We are satisfied that, in view of our own decisions, it must be held that there was no such mutual rescission of the contract for purchase as would give to plaintiff, the sole party in default, the right to recover moneys paid under the contract.

It is, perhaps, needless to say that the question of actual detriment to the vendor by reason of the vendee's breach is in no way involved in this action. Entirely regardless of gain or loss to the vendor, the *vendee* has no right of recovery in view of his own repudiation of the contract. However one may feel as to the disposition of the vendor under such circumstances as are found to exist in this case, to insist on retaining all of the money paid by plaintiff, it is simply standing on its strict legal right.

The judgment of the superior court is affirmed.

Shaw, J., Olney, J., Lennon, J., Sloane, J., Wilbur, J., and Lawlor, J., concurred.