[Civ. No. 4486. First Appellate District, Division One.—January 4, 1924.]

## A. PHILLIPS, Respondent, v. B. STARK, Appellant.

[1] SALES—BREACH BY BUYER—ACTION FOR DAMAGES—ISSUES—IMPLIED FINDINGS.—In this action for damages for the breach of a contract to purchase a grocery and bakery business, the plaintiff having pleaded a certain contract and the defendant having denied specifically the making of such contract, and, by way of a further defense, set up a different contract and then pleaded the rescission of such contract, but the trial court having found that the contract pleaded by plaintiff was made and breached by defendant, it necessarily found, by implication, that the contract pleaded by defendant was not made, and the question of rescission of such contract became immaterial; and the failure of the trial court to find on such issue was not error.

[2] ID.—IMMATERIAL ISSUES.—Where issues upon which findings are made are necessarily decisive of the case, it is unnecessary that the findings should dispose of any further issues, as all other issues thereby become immaterial.

[3] ID.—ABSENCE OF FINDINGS.—Failure to find on an issue raised either by answer or cross-complaint is not reversible error where, if the finding had been made, it would be adverse to appellant.

[4] ID.—PURCHASE OF GROCERY AND BAKERY—BREACH BY BUYER—EVIDENCE — FINDINGS. — In this action for damages for the breach by the buyer of a contract to purchase a grocery and bakery business, there was ample evidence to justify the findings of the trial court to the effect that defendant, "by means of trick, misrepresentation, artifice or fraud," obtained possession of the check which he had given plaintiff as a payment on account at the time of making the contract, that defendant "was the owner and in possession" of the property contracted to be sold, "that plaintiff was forced to sell his business" after defendant had abandoned it and refused to go ahead with the deal, and that plaintiff exercised good faith in making the sale of the business for the account of defendant and was ready and willing to follow any proper instructions defendant might give as to the time and manner in which said sale should be made.

[5] ID.—ABILITY TO PERFORM—EVIDENCE—FINDINGS.—The evidence having shown, and the trial court found, that upon the making of the agreement of sale and the making of the initial payment by defendant, the property agreed to be sold, and every part

thereof, was delivered to defendant and he was placed in complete possession thereof, there was no merit in defendant's contention that plaintiff should not be allowed to recover because he could not have performed the contract.

[6] ID. — PROPERTY INCLUDED — MISTAKE — RESCISSION — EVIDENCE— PLEADING.—Defendant himself having testified that certain ovens which he claimed were included in the contract were built right into the building and were a part of the building, and the receipt for the initial payment, which was dictated by him at the time of the making of the contract of purchase, having expressly recited that anything attached to the building was not included, he was not entitled to claim a rescission, based upon the ground of mistake, even if it had been pleaded as a defense, which it was not.

[7] ID. — RETAKING POSSESSION — RESCISSION. — When defendant not only refused to pay, but repudiated the contract and abandoned the property, plaintiff was not required to leave the property to its fate, or allow it to be lost or destroyed for want of protection, and his act in retaking possession of it did not indicate any acquiescence on his part in the repudiation, or any intent to end the sale; and such act did not amount to a rescission.

[8] ID.—RESALE BY VENDOR—RESCISSION.—When defendant repudiated the contract and abandoned the property, and plaintiff had retaken possession of it, the act of the latter in reselling it did not amount to a rescission of the prior sale to defendant.

APPEAL from a judgment of the Superior Court of Los Angeles County. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

E. F. Gerecht and C. W. Hall for Appellant.

Lester William Roth for Respondent.

SHORT, J., *pro tem.*—This is an appeal by the defendant B. Stark from the judgment in favor of the plaintiff for the sum of $3,920.50 as damages suffered by the plaintiff by reason of the alleged failure of the defendants to complete the purchase of a certain grocery and bakery business, which plaintiff claimed he sold to defendants for the sum of $10,000. A motion for a new trial was denied by the trial

court. The appellant desires a review of the ruling of the court on said motion and a consideration of the judgment as a whole.

The testimony in the case developed the following facts:

The plaintiff was the owner of a grocery and bakery and sold it to the defendants for the price of $10,000. The defendants, at the time, gave plaintiff a check for $500 on account, agreed to pay the balance the next day, and received immediate possession. The next day the plaintiff called upon the defendant Stark to obtain the balance of $9,500, and in the course of the interview was tricked into giving him temporary possession of the check for $500. As soon as he got the check, the defendant had it torn up, refused to pay anything on the purchase price, and told the plaintiff that the sale was off, that he would have nothing to do with the property, and he could do with it as he pleased. The defendants then abandoned the bakery and the plaintiff retook possession and sold it at public auction, but without giving the notice to the defendants required by the code for a sale in enforcement of a vendor's lien.

That defendant and appellant purchased the business in question primarily for the purpose of selling the same to another auctioneer on a quick turnover at a profit of $500, or, failing in this, of auctioning the place of business to the public. Appellant admitted that he never intended to run the place as a going business, and further admitted that, although offered to him as a part of the same bargain, and with no increase in the purchase price, he did not want the ten-year lease which respondent held on the premises.

That early in the morning following the evening on which the sale was made appellant called up an auctioneer and expert appraiser, one Kohn, and requested said Kohn to go to the place of business in question, look the same over, and make him an offer on the same; that Kohn made his appraisal at appellant's request, and was accompanied by appellant's agent while he was making the same; that although his attention was directed to various kinds of portable machinery, nothing at all was said to him about ovens, either by appellant's agent or by appellant himself. On Kohn's returning to appellant's place of business, appellant asked Kohn what he would give him for it. Kohn responded that he was not spending his time appraising stock

for appellant, and that if appellant wanted to do business, he would have to name the price he had paid, and tell Kohn how much profit he wanted. Appellant stated that he paid $10,000 and wanted a profit of $500. Kohn told appellant that if he paid $10,000, he could not pay him a profit thereon.

That it was only during the conversation between Kohn and appellant that the question of ovens came up for the first time, and that appellant thereupon turned to Singer, his brother-in-law, and said, in the language of Kohn, ''That that would be a point they would claim on. Whatever he meant by that, I don't know.''

[1] The first point made by appellant is that the findings are insufficient in this: ''That the trial court failed to find upon certain material issues raised in the affirmative defense set forth in the answer of defendant B. Stark to plaintiff's amended complaint.''

That one of the affirmative defenses set forth in the answer is that there was a mutual rescission of any and all contracts entered into by and between plaintiff and defendant in regard to the sale of said grocery and baking business; that said defense was a material issue, and that the trial court's failure to find on said issue should entitle him to a new trial.

The amended complaint in the case at bar pleads the following contract:

''Plaintiff and defendants entered into an agreement whereby the plaintiff agreed to sell, transfer and deliver, and the defendants agreed to buy and take possession of, all stock and fixtures and bakery fixtures and machinery, exclusive of fixtures attached to the building then located and on the premises at said place of business.''

Appellant in his amended answer denies specifically all of the allegations of the amended complaint, and then sets up a new and different contract, as follows: ''Plaintiff agreed to sell, transfer and deliver to defendant B. Stark all the stock and fixtures, including bakery fixtures and machinery, and also bakery ovens and fixtures attached to the building, with exception of shelving in front store room for the sum of $10,000.'' And then pleads an alleged rescission of said contract alleged in his amended answer and

insists that there should have been a finding upon his contract and the rescission thereof.

The trial court found for the plaintiff in the identical language of the amended complaint.

The trial court having found that the contract alleged in the amended complaint was made and breached, it necessarily found, by implication, that the contract alleged in the amended answer was not made, then there could be no contract to rescind, and the question of rescission became immaterial. (*Parker* v. *Power*, 28 Cal. App. 332 [152 Pac. 935]; *Black* v. *Black*, 74 Cal. 520 [16 Pac. 311]; *Churchill* v. *Baumann*, 95 Cal. 541–545 [30 Pac. 770].)

[2] Where issues upon which findings are made are necessarily decisive of the case, it is unnecessary that the findings should dispose of any further issues as all other issues thereby become immaterial. (*Murphy* v. *Bennett*, 68 Cal. 528 [9 Pac. 738]; *McCourtney* v. *Fountain*, 57 Cal. 617; *Porter* v. *Woodard*, 57 Cal. 535; *Shank* v. *Blackburn*, 53 Cal. App. 620 [200 Pac. 762]; *Spaulding* v. *Dow*, 118 Cal. 424 [50 Pac. 543].)

The trial court having decided and found in the language of the complaint that the contract pleaded by the amended complaint was the contract made and breached, by necessary implication, found against the contract set up in the amended answer. (*Parker* v. *Power*, 28 Cal. App. 332 [152 Pac. 935]; *Black* v. *Black*, 74 Cal. 520 [16 Pac. 311]; *Churchill* v. *Baumann*, 95 Cal. 541–545 [30 Pac. 770].)

[3] Failure to find on an issue raised either by answer or cross-complaint is not reversible error where if the finding had been made it would be adverse to appellant. (*Reveal* v. *Stell*, 56 Cal. App. 463 [205 Pac. 875]; *Cross* v. *Thiele*, 51 Cal. App. 780 [197 Pac. 974]; *Arrelano* v. *Jorgensen*, 52 Cal. App. 622 [199 Pac. 855]; *Thresher* v. *Lopez*, 52 Cal. App. 219 [198 Pac. 419]; *Kendrick* v. *Gould*, 51 Cal. App. 712 [197 Pac. 681]; *Furlong* v. *White*, 51 Cal. App. 265 [196 Pac. 903].)

The trial court in the case at bar having found each and every allegation of the amended complaint to be true, must necessarily have found adversely to the affirmative defense set up in said amended answer even had findings been made on the issue complained of.

The appellant alleged in his answer that plaintiff returned to B. Stark the said check of $500, and that the defendant and plaintiff agreed to cancel said sale and purchase of said stock and fixtures and defendant returned to plaintiff his receipt for the $500 and that the said receipt was destroyed and canceled by mutual consent of plaintiff and defendant. Upon this subject the court found:

"That on the following day, more particularly to-wit: on Monday, November 24, 1919, at or about 10 o'clock a. m., plaintiff went to the place of business of defendant B. Stark to receive, in accordance with aforesaid contract, the balance of the purchase price of nine thousand, five hundred dollars ($9,500.00), and said defendant B. Stark did then and there, by trick, misrepresentation, artifice and fraud, obtain possession of said check for five hundred dollars ($500.00) and destroyed the same and refused to make a repayment of the said five hundred dollars ($500.00) or any sum at all, and refused to pay the balance of nine thousand five hundred dollars ($9,500.00) or any sum at all on account of said contract; and further, defendant B. Stark, who was then the owner and possessor of all the aforesaid personal property, did then and there tell plaintiff that so far as he was concerned, the deal was off, and refused to have anything further to do with the same.

"That plaintiff thereupon demanded the return of said receipt which he had given to defendant B. Stark, and defendant B. Stark did then and there, and in the presence of plaintiff and others, destroy said receipt," which completely contradicts the claim that plaintiff voluntarily surrendered the check and agreed to a rescission, or agreed to have said receipt torn up, and the trial court having also found that the contract alleged in the complaint was the true one, there was no necessity for further findings on said affirmative defenses.   The findings support the judgment and are sufficient.

[4]   The appellant claims that certain findings are not supported by the evidence.   He contends that there is no evidence from which the trial court was justified in finding that the defendant B. Stark obtained possession of the $500 check from the plaintiff by means of trick, misrepresentation, artifice, or fraud, or that the defendant B. Stark was

then the owner or in possession of the said personal property involved in said action as set out in Finding III.

The evidence shows that the morning after the agreement defendant called a Mr. Kohn, who was an auctioneer and an appraiser of stocks of goods in stores, and sent him over to look at the stock in the store of plaintiff, and when he returned, tried to sell it to said Kohn at a profit of $500, but Kohn, after ascertaining the price defendant had agreed to pay, told him that it was not worth what he asked, and declined to purchase; that defendant mentioned the ovens in the store, and Kohn told him he could not figure on them. That then the defendant addressed Singer, his brother-in-law, and said, ''That would be a point they could claim on. . . . That would be the point upon which he could recall the bargain.''

Thereafter defendant had plaintiff called and asked him to come to his place of business, and after his arrival appellant testified:

'' . . . 'Are you ready to settle?' He said 'Yes.' I asked him, 'I can make out a check for $10,000.00, and see Mr. Smith attorney to make out a bill of sale.' I asked Mr. Phillips, 'Have you got the check for $500 I borrowed from Mr. Singer?' 'Yes.' 'If you don't mind, I will take that check and give it to Mr. Singer, and he will give you a check for $10,000.' He took out the check, giving it to me. I gave it to Mr. Singer, and Mr. Singer destroyed it.''

Again the appellant testified as follows:

''Q. Didn't you tell him when you asked him for the check to give—'give me the check for $500, and I will write it out for you?' A. I didn't say that right there; I said, 'I will give you one for $10,000.' ''

The attention of appellant was then called to testimony given in his deposition taken prior to the time of trial, in which he testified as follows:

''Question by Mr. Roth: When I came, I found him in the office waiting for me. I said, 'Are you willing to do business?' A. 'Perfectly willing.' I said, 'I am ready myself.' I went down to my safe and got a check to give him for $10,000. I said, 'Mr. Phillips, have you got that check last night you got from Mr. Singer?' He said, 'Yes.' I said, 'If you don't mind, give me the check for $500, and I will make a check for $10,000, as per contract.' He took

out the check for $500, and gave it to Mr. Singer, and I and Mr. Singer and Mr. Phillips and his manager went to Smith the attorney. Q. You testified that way? A. I don't testify any different. I said I would give him a check according to the contract."

The evidence further shows that as soon as he had secured and had destroyed the $500 check, he began to talk of a new agreement, and raised the question about the ovens for the first time, and then repudiated the agreement made the previous evening. This, with other evidence contained in the record, fully supports the finding complained of.

As to the objection there is no evidence which sustains that part of Finding III "that defendant B. Stark was the owner and in possession of all the aforesaid property."

The evidence shows that appellant took possession of the premises, and every part and portion thereof, on the night the sale was made, and further, that immediately after he had paid the deposit of $500, that he also agreed to pay the workmen in the bakery shop for that evening, so that he could have the results of the evening baking; that he nailed down all the doors with a hammer and then locked the front door with a lock, that he hired a watchman to guard the premises all night, and that he sent Singer to the place early the next morning to take charge of the same, and that he remained in charge of same until about 11 o'clock of the morning after the sale, after which he ordered his man to leave the place purchased and completely abandoned the property he had bought, which evidence was not seriously disputed by appellant. The evidence sustains the finding objected to.

Appellant objects to Finding VIII in that the evidence does not show "that plaintiff was forced to sell his business." The evidence upon this subject shows that appellant or his agents told respondent's customers the next day not to wait for bread, to buy somewhere else, that they could not get any more there because they had stopped baking and that the bakers and milkmen were sent away, saying that they were going to close the store and it would not be opened up until there was an auction sale, that he had to sell because the creditors were alarmed and they all came to Phillips' place of business and thought that he was going bankrupt. and they all wanted their money; that his busi-

ness was ruined because they had turned away bakers, and his business. The above evidence is sufficient to sustain the finding objected to; in fact, under the circumstances shown it was his best remedy.

The next finding complained of is that plaintiff exercised good faith in making said sale, and was ready and willing to follow any proper instructions defendant B. Stark might give as to the time and manner in which said sale should be made.

No notice was given appellant of the sale, but there was evidence that respondent called appellant several times on the phone; that each time the person who answered immediately put up the phone as soon as he heard respondent's voice.

Though no notice was given of the sale, the parties stipulated in open court and the court found that the sum of $6,079.50 was the market value of said property at said time and place, and we think the evidence sufficient to sustain said finding, taking it altogether.

[5] Appellant asserts that respondent should not be allowed to recover because he could not have performed the contract.

The evidence shows and the court found as a fact that the merchandise in question and every part thereof was delivered to appellant and that he was placed in complete possession thereof the night the transaction was made; and as the court said in *Phillips* v. *Stark,* 186 Cal. 369, 370 [199 Pac. 509, 510]: "The delivery of possession to the defendants, of course, operated to pass title, there being nothing to indicate a contrary intention."

Thus it appears that he not only could perform, but that he did perform.

Appellant claimed there was no meeting of minds of the parties as to the terms of the contract.

A receipt was introduced in evidence for the $500 payment, which receipt sets forth the terms on which the parties agreed, and is as follows: "I hereby sell stock and fixtures, including bakery fixtures and machinery, and anything attached to building not included, for the sum of $10,000.00. Received $500.00 deposit the balance to be paid in escrow Monday, November 24th," which receipt was dictated by appellant and written by the daughter of respondent. This

receipt and the oral evidence amply supports the finding that "on or about the 23rd day of November, 1919, at or about 8 o'clock p. m., at the plaintiff's place of business, located at No. 910 West Temple street, in the city and county of Los Angeles, state of California, plaintiff and defendant B. Stark entered into an agreement whereby the plaintiff agreed to sell, transfer and deliver, and the defendant agreed to buy and take possession of all stock and fixtures, and bakery fixtures and machinery exclusive of fixtures attached to the building then located and on the premises at the said place of business, and defendant B. Stark promised to pay the sum of ten thousand dollars ($10,000.00) therefor, in the manner as follows, to-wit: Five hundred dollars ($500.00) down and nine thousand five hundred dollars ($9,500.00) at defendant B. Stark's place of business at No. 114 North Spring street in the said city and county, on Monday, November 24, 1919."

It is conceded by all parties to the action that the ovens mentioned in this case were built into the walls of the building and were attached thereto; and in view of the foregoing receipt and finding of the trial court, it would be a useless waste of time to discuss that subject further, as the matter has already been heretofore determined in favor of respondent on conflicting evidence, for, as it has hereinbefore been held, the finding that the contract set out in the complaint was made, by implication, was a finding that the one set out in the answer was not made.

[6] Appellant maintains that there was a rescission of the contract: Because of mistake about the ovens which he claims were included in the contract. Appellant himself testifies that the ovens were built right into the building and were a part of the building, yet the receipt dictated by him said: " . . . and anything attached to building not included." In view of the above, we think he should not be allowed to claim a mistake even if pleaded as a defense, which it was not.

Again appellant insists that no possession of the property was ever taken by him. The court found that possession was taken by him, and said finding is supported by the evidence.

The next point made by appellant is that respondent accepted the return of $5.20 taken in for sales while appel-

lant was in possession of the stock. The evidence shows that the money was given to an employee of respondent without respondent's knowledge and upon his informing respondent about it, he immediately asked him why he took it, and took the money and placed it in the cash register with other money there, and it was kept as a part of the receipts of the sale, and not as respondent's property.

[7] As to the effect of respondent's retaking possession of the property, the supreme court said:

"As to the retaking of possession, if the plaintiff had done so under such circumstances as to show an acquiescence on his part in the position taken by the defendants that the sale was off, there would at once have been a rescission by mutual consent. . . . But when the defendants not only refused to pay, but repudiated the contract and abandoned the property, the plaintiff's act in retaking possession of it certainly cannot be said to indicate any acquiescence on his part in the repudiation or any intent to end the sale. Whether he intended to insist upon the contract or not, the only sensible thing for him to do was to retake possession. He either had to do so for the protection of the property or allow it to be lost or destroyed for want of protection. He could, of course, have left it to its fate, but he was not required to follow any such hazardous and unreasonable course. The defendants thrust the necessity of taking possession upon him, and very plainly against his will, and without any thought on his part of acquiescing in their repudiation or himself terminating the contract of sale. Under these circumstances, there was no rescission." (*Phillips* v. *Stark*, 186 Cal. 369, at 372 [199 Pac. 509, 511].)

[8] And finally, as to the effect of the resale of the property by respondent after he had retaken possession, the supreme court said in the same case:

"For much the same reasons, the second act of the plaintiff, that of reselling the property, did not amount to a rescission. The defendants had repudiated the contract and abandoned the property. The plaintiff had it on his hands. Was he, in spite of the defendants' absolute and unequivocal repudiation of the contract, to be required to hold it for them indefinitely under penalty of otherwise acquiescing in their repudiation and losing any right of recovery against them? That question has been answered in this state in

cases exactly similar except for the fact that title to the property had not passed to the vendee. It has been held a number of times that a ·resale by a vendor whose vendee has repudiated the contract docs not work a rescission. (See *Tomboy Gold etc. Co.* v. *Marks,* 185 Cal. 336 [197 Pac. 94], and cases there cited.) Upon this point we can see no difference between them and such a case as the present where the title has passed before the repudiation, but the vendee by the repudiation has left the property upon the vendor's hands. The actual situation of the parties is exactly the same. The vendees wrongfully refuse to consummate the sale, and the vendor has the property on his hands. In fact, we see no reason why the plaintiff may not insist that the defendants, by thrusting the property back upon him and thereby undoing the delivery by reason of which title passed, have in effect estopped themselves from claiming that their rights are any different than they would have been if the delivery had not been made." (*Phillips* v. *Stark,* 186 Cal. 369, at 373 [199 Pac. 509, 511].)

From the foregoing, it appears that there was no rescission.

We think that because of the conclusions already reached in the foregoing opinion, the question regarding the supplemental findings becomes immaterial.

For the reasons herein given, we think that the order denying the new trial and the judgment should be affirmed, and it is so ordered.

Tyler, P. J., and St. Sure, J., concurred.