[Civ. No. 3948.   Third Appellate District.—January 29, 1930.]

B. T. COSSINS, Respondent, v. HERSHEL CALIFORNIA FRUIT PRODUCTS CO. (a Corporation), Appellant.

Levinsky & Jones and Charles H. Epperson for Appellant.

G. M. Steele and Scott Rex for Respondent.

FINCH, P. J.—This is an action for damages for the defendant's alleged refusal to accept and pay for tomatoes raised by the plaintiff and his assignors during the year 1926, and which the defendant had agreed to purchase, and for balances due for tomatoes delivered and accepted by the defendant. The complaint contains five counts, based on five separate contracts. The plaintiff is the seller named in the first contract, A. F. Donald and F. Ascrizzi in the second, C. C. Burnett and P. Giordano in the third, E. Leventini in the fourth and Thomas Lazini in the fifth. Judgment for damages was entered in favor of the plaintiff on the first four counts and for the defendant on the fifth. The judgment is in favor of the plaintiff also for the amount which the answer admits was due for tomatoes accepted by defendant. The defendant has appealed from the judgment in favor of the plaintiff.

Each contract provides that the buyer "has bought" the crop of "Early Anna" tomatoes to be grown by the seller upon a specified acreage during the year 1926 at $14.10 per ton, delivered f. o. b. cars "as hereafter directed by buyer." The defendant supplied the sellers with seed, a part thereof being of a different variety from that specified in the contract. This departure from the terms of the contract appears to have been made by mutual consent and is not material here. It seems to have been understood between the parties that the tomatoes were to be delivered at Peltier station.

Appellant contends that the evidence is insufficient to support the findings in favor of the plaintiff. Some parts of the appellant's argument go to the weight of the evidence rather than its insufficiency  Since the function of an appellate court in this respect is to determine merely whether there is substantial evidence to support the findings, it is deemed sufficient to state the evidence most favorable to the plaintiff.

Early in July, when from two to four tons of tomatoes per acre were ripe and ready for market, the defendant refused to take them. This refusal constituted a plain breach of the agreements with the growers. However, at the defendant's suggestion, the growers sold · their tomatoes, as they ripened, to other buyers, until the defendant opened

its cannery, and they have made no claim for damages arising out of this first breach.

The defendant's cannery was opened in the early part of August, and during the remainder of that month the defendant accepted the tomatoes shipped to it by the growers, making deductions, however, for those claimed to be of inferior quality. The cannery is located at San Jose. At the inception of the transactions in question, the defendant employed J. S. Triolo, who was engaged in the fruit and produce business in the city of Stockton, "to contract these tomatoes, supervise the loading, pay for the labor of loading, for the sum of 75 cents a ton on all contracts," and also to inspect the tomatoes before shipment and "keep a proper daily report of each car that is shipped." He or his assistant, Victor Ghiorzo, inspected all shipments of tomatoes involved in this action made during August but, apparently, not to the satisfaction of the defendant. About September 3d, the defendant employed John Vasconcellos to inspect the tomatoes of the Peltier growers. His first act was to reject tomatoes offered for shipment by the growers mentioned in the first three counts. The plaintiff testified that those so offered by him "were in good condition. They were sorted tomatoes, picked very carefully . . . and sorted. . . . We threw all the bad tomatoes in the ditches, absolutely trying to get by the inspector, and they were excellent tomatoes, in fine shape, solid; the boxes were well filled; they were not mashed. . . . I got plenty of instructions through Mr. Triolo from Mr. Hershel (president and general manager of defendant) to keep me from moving my 510 tons. . . . He gave me the instructions Hershel sent word that he didn't want anything more to do with Cossins at all, he would receive no more tomatoes from his ranch. . . . He told me that about the second day after the inspection took place." Triolo testified that shortly after September 3d Hershel "told me he wanted nothing more to do with Cossins." Hershel's statement appears to have been induced by violent language and conduct of plaintiff towards Vasconcellos at the time of the inspection mentioned. Triolo testified, without objection, as follows: "I said to him, 'you are a tomato inspector?' 'Well,' he says, 'No, I can't say I am. . . . I am in the tire business in San Jose.' I said, 'You have no experience in growing tomatoes or anything?' He said,

'No, I have not, but I know just what I want to accept.' . . . On one particular occasion I . . . brought the subject up, what kind of tomatoes he (Cossins) had to deliver. Mr. Vasconcellos at that time informed me that they had to be perfect, no deductions were allowed. . . . He told me he would stand for no dockage at Peltier."

Mrs. Burnett testified Vasconcellos said he could not accept the Burnett tomatoes inspected at the time mentioned "because they are not 100% pure. I told him, 'You cannot raise anything like that.' He said, 'Well, I know that, but that is my instructions, not to take them unless they are 100% pure.' . . . Perhaps not that word, but 'perfect.' . . . He said the tomatoes were good, but he could not take them because they were not 100% perfect." Mr. Burnett testified that at another time Vasconcellos inspected two loads of tomatoes belonging to the witness and "said, 'I reject these.' I said, 'What is the matter, those tomatoes are all right.' . . . He said, 'Those tomatoes are all right, those tomatoes are good, but my instructions are that they must be at Peltier 100% perfect. At Stockton I am allowed to make deductions and let them go on, but at Peltier they must be 100% perfect. . . . I am sorry, I am not anything but a hired man, I must follow my instructions.' " Another witness testified that the tomatoes so rejected were "all right tomatoes, all in good condition, . . . Good, merchantable tomatoes." Ghiorzo testified that Vasconcellos found a few of Burnett's tomatoes "kind of cracked, and some with green ends at the stem, and he said that he could not accept those tomatoes under his directions. . . . That is, he could not accept them unless they were 100% perfect." Triolo testified: "An Early Anna tomato has a characteristic or individuality, no matter how ripe it gets, there is always at the butt end of the tomato a sort of greenish spot. . . . That tomato will rot and still the green spot will be on it." It was stipulated at the trial that the Early Anna tomato will not "ripen up so that the green spot where the stem has been will disappear and turn red."

The plaintiff and his assignor Burnett made no further effort to deliver their tomatoes to the defendant, but sold as many of them as they could find markets for to other buyers at the best price obtainable, which was lower than the defendant had agreed to pay therefor, the market price

having fallen below such agreed price. The court gave judgment for damages in the amount of the agreed price of the unsold tomatoes, less the estimated cost of picking and delivering them.

The appellant contends that the growers did not make a sufficient tender of the tomatoes to put the buyer in default. While the evidence would support a finding either way on that issue, it cannot be held as a matter of law that the evidence· is insufficient to support a· finding to the effect that the defendant repudiated its contract with the plaintiff and that with Burnett and Giordano. It not only refused to accept plaintiff's tomatoes which Vasconcellos first inspected, but informed the plaintiff through Triolo that it would receive no more tomatoes from him. This was such a repudiation of the contract as to relieve the plaintiff of the necessity of making any further tender. (*Tomboy Gold & Copper Co.* v. *Marks,* 185 Cal. 336 [197 Pac. 94].) The defendant unreasonably refused to accept the tomatoes of Burnett and Giordano. One of the grounds upon which ·they were rejected was the presence of green spots at the stem end, a condition which it was impossible to avoid, a fact the defendant must have known when it agreed to purchase Early Anna tomatoes. In justice to the defendant, it may be added that much of the damaging testimony given against it was denied by its witnesses, but the determination of the conflict was within the exclusive province of the trial court.

The evidence is conflicting also as to the tonnage of tomatoes lost by the plaintiff and his assignors because of the defendant's repudiation of the .contracts. Such evidence is too extensive to be set forth herein, but an examination thereof shows that it is sufficient to support the findings in relation thereto.

The evidence fails to show that tomatoes of Donald and Ascrizzi which Vasconcellos rejected were of marketable quality. This is a fatal defect of proof. It appears from Donald's testimony that after Vasconcellos rejected one load of tomatoes they "stopped irrigating" and made no effort to market the remainder of the crop. He testified: "There was no use of picking if you were under contract with a cannery and the cannery would not take them, and

I was not going to take chances to sell to somebody else and then get in trouble over that." It was the duty of these sellers to make reasonable efforts to minimize their damages. (Civ. Code, sec. 3353; *Vitagraph, Inc.,* v. *Liberty Theatres Co.,* 197 Cal. 694 [242 Pac. 709]; *Hill* v. *McKay,* 94 Cal. 5 [29 Pac. 406]; 8 Cal. Jur. 782, 787.)

■ It appears from Leventini's testimony that he continued to deliver tomatoes to the defendant until about the first of November. His claim for damages, according to his testimony, was based on defendant's failure to furnish him a sufficient number of boxes for the shipment of his tomatoes. The complaint does not allege any such default on the part of the defendant and the court made no finding in relation thereto. The complaint alleges that Leventini "tendered delivery of said tomatoes to defendant," but that the defendant refused to accept those for the loss of which damages are claimed. The court found to the same effect. There is no evidence to support this finding. The written agreement does not obligate the defendant to furnish boxes. The contract provides:

"If, for the convenience of seller, buyer shall furnish boxes to seller for delivery of fruit and vegetables, a rental charge of one cent per box for each time used . . . shall be paid by seller. . . . Buyer will not be held accountable or responsible for failure to furnish boxes at any particular time."

■ The defendant did, in fact, furnish Leventini with boxes for some of his shipments, but it cannot be held on that account that it is liable in damages, contrary to the express provisions of the contract, for its failure to furnish boxes demanded for other shipments.

The other grounds urged by appellant for the reversal of the judgment on the first and third counts have been considered and it is deemed sufficient to say that they appear to be without sufficient merit to warrant a discussion thereof.

The judgment in favor of the plaintiff for damages in the sum of $1085.80 on the second count of the complaint and $715.43 on the fourth count is reversed and in all other respects the judgment is affirmed.

The trial court is directed to retry the causes of action for damages alleged in the second and fourth counts of the complaint.

Thompson (R. L.), J., and Plummer, J., concurred.

. A petition for a rehearing of this cause was denied by the District Court of Appeal on February 28, 1930.