[Civ. No. 90. Fourth Appellate District.—February 7, 1930.]

BEN H. ARKELIAN et al., Appellants, v. NATIONAL BANK OF VISALIA (a National Banking Association) et al., Respondents.

Conley, Conley & Conley for Appellants.

J. A. Chase for Respondents.

MARKS, J.—In this action appellants brought suit against respondents for $500 alleged to have been had and received by respondents for the use of appellants. Judgment was rendered in favor of the respondents and this appeal was taken upon the ground that the findings of the trial court do not support the judgment, and, that upon the findings, judgment should have been rendered for appellants, if not for the full amount claimed, then at least, for the sum of $250.

The evidence shows that appellants were copartners engaged in the business of buying dried fruits; that the National Bank of Visalia was a national banking corporation and that L. C. Hyde was its liquidating agent and acted for it in the transactions involved in this case. The bank owned a vineyard in Tulare County upon which were grown the grapes which were cured into the raisins involved herein.

On June 15, 1926, in a written contract, appellants agreed to buy from the bank, and it agreed to sell to them, twenty-five tons of guaranteed soda-dipped Thompson seedless raisins at the price of six cents per pound. The bank agreed "to properly dry and cure such fruit and to deliver the same, thoroughly and properly dried and cured, ungraded as to size, choice in quality, of good color, sound, and in original condition, without addition of water, free from defective fruit, slabs or damage of any kind, and in good marketable and merchantable condition," to the appellants at Fresno, California, either as a whole or in deliverable lots as soon as possible. Appellants paid the bank $500 on account of the purchase price of the raisins, which is the subject of this action.

When part of the raisins were cured, respondents tendered delivery, which was refused by appellants upon the ground that a large percentage of the raisins were off color and so were not "choice in quality" and therefore not in a "good marketable and merchantable condition." The only question presented was as to the color of the raisins, appellants claiming that they were about fifty per cent dark and there-

fore not of choice quality as soda-dipped raisins. Respondent presented evidence to the effect that only eight or nine per cent of the raisins were dark and that the balance were of the good amber color desired in soda-dipped raisins. After the rejection of the raisins by appellants on account of their color, the parties conferred several times in an effort to reach a settlement of the difficulty. Appellants offered to take the raisins and sort them, accepting and paying for only the amber colored ones at the contract price and either rejecting the others or selling them for the account of the respondent bank at the market price for such fruit. If this offer were not accepted by the bank, appellants advised it to sell the raisins at the market which was then from five to five and one-half cents per pound. The bank sold the raisins for five and one-half cents per pound, which was the "top market" for soda-dipped Thompson seedless raisins at the time. The trial court found that the raisins tendered appellants were of the quality described in the contract; that appellants had refused to accept the same without lawful excuse, and rendered judgment for respondents. Appellants attack the finding of the court as to the quality of the raisins and maintain that there was a mutual rescission of the contract by the parties.

■ Where there is any material and competent evidence in the record to support the finding of a fact by the trial court, it will not be disturbed on appeal. This is too elementary to need citation of authorities. ■ There is ample evidence to support this finding. Respondents produced evidence to show that soda-dipped raisins are never uniform in color as some always fail to take the bleach, and that the percentage of dark raisins in the lot in question was not unusual; that soda-dipped raisins were never sorted by the seller and that those in question were of good color as the trade knew this term, and were choice in quality and in good marketable and merchantable condition as those terms were used by those dealing in this kind of dried fruit. Of course, there was other evidence produced by appellants flatly contradicting this, but it created a conflict which the trial court resolved in favor of the respondents. This finding will not be disturbed here, especially as the raisins were actually sold at the highest market price obtainable for soda-dipped raisins at the time. ■ As, under this finding the

appellants had no legal excuse for refusing to accept and pay for the raisins, the bank could sell them in the open market if it so desired, without subjecting itself to the claim of a rescission of the contract. ■ A rescission of a contract is effected by the mutual consent of the parties, and such a consent on the part of the seller is not shown by the mere sale of the property where the buyer refuses to accept and pay for it. (*Phillips* v. *Stark,* 186 Cal. 369 [199 Pac. 509]; *Phillips* v. *Stark,* 65 Cal. App. 136 [223 Pac. 443]; *Cincotta* v. *Catania,* 61 Cal. App. 38 [214 Pac. 451]; *Tomboy Gold & Copper Co.* v. *Marks,* 185 Cal. 336 [197 Pac. 94]; *Little* v. *Kennedy,* 86 Cal. App. 324 [260 Pac. 890].)

■ The facts in the case of *Tomboy Gold & Copper Co.* v. *Marks, supra,* are so exactly similar to the case at bar that it will be unnecessary to extend this discussion further. In that case the Supreme Court held that a purchaser who had breached his contract of purchase of personal property could not recover money paid on account of the purchase price in an action for money had and received where there was no mutual rescission of the contract, even though the seller had later sold the personal property involved to another for the same price that was to have been paid by the original purchaser. The other cases hereinbefore cited, especially *Cincotta* v. *Catania, supra,* amply support this rule. In the case of *Tomboy Gold & Copper Co.* v. *Marks, supra,* the court said: ''In the absence of a mutual rescission there can be no recovery by the vendee under such circumstances. No rule is more firmly settled with relation to contracts for purchase, whether concerning real or personal property, than that to the effect that a vendee, who without lawful right refuses to go on with his contract, cannot recover from a vendor not in default who is ready and willing to proceed and fulfill all his obligations, all or any of the money that he had paid to the vendor in accord with the terms of the agreement. This rule has been uniformly applied in California. It was declared in both opinions in *Glock* v. *Howard,* 123 Cal. 1, 10, 19, 20 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713, 720], the opinion of Mr. Justice Henshaw saying that in such a case the vendor, 'still resting upon the contract, . . . may remain inactive, yet retain to his own use the moneys paid by the vendee; so that it is of no moment whether or not the contract declares that

such moneys shall upon the breach be forfeited as liquidated damages,' and the opinion of Mr. Justice Harrison declaring it to be the law of the state that 'the vendee, who was himself in default in the payment of a portion of the money, could not against the will of the vendor repudiate the contract and recover the portion already paid.' Many cases might be cited in which this rule has been applied, but the rule is not disputed, and it is plain that plaintiff has no right of recovery here except upon the theory of mutual abandonment and rescission. Upon the facts of this case there is no other possible foundation for a right of recovery on the part of plaintiff. The single question presented, then, is whether the sale of the machine to another vendee by defendant corporation within a month after the final and definite repudiation of its contract by plaintiff must be taken as a consent to rescission on the part of defendant corporation. We think this question was squarely decided against the contention of plaintiff in *Rayfield* v. *Van Meter,* 120 Cal. 416 [52 Pac. 666]."

Judgment affirmed.

Sloane, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 3, 1930.