[Civ. No. 4490. Third Appellate District.—March 7, 1932.]

THE TEXAS COMPANY (a California Corporation), Appellant, v. BERRY GARAGE et al., Respondents.

456

Huston, Huston & Huston for Appellant.

Herbert Choynski and Martin I. Welsh for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a money judgment for the contract price of gasoline. The plaintiff claims the gasoline was purchased pursuant to the terms of a written agreement which was executed by the respective parties February 24, 1928. On the contrary, the defendants contend the gasoline was purchased under the terms of a previous oral agreement which entitled them to a discount of six cents a gallon from the local prevailing retail price thereof while the written contract provides for only four cents discount per gallon. It is asserted the written agreement was executed with the express understanding that it was not to become binding upon the parties with respect to the price of gasoline, but that it was executed for the sole purpose of enabling the plaintiff to use the document to deceive other competing companies by making it appear therefrom that plaintiff was not allowing retail customers a rebate on the current price of gasoline in excess of four cents per gallon.

Over the objection of the plaintiff the defendants were permitted to introduce evidence of this oral agreement to purchase gasoline at a six cent discount per gallon from the current retail price thereof. It is contended this ruling of the court is erroneous since it varies the terms of the written contract upon which the plaintiff's cause of action is founded.

 We are of the opinion this evidence is competent under the pleadings in this case for the purpose of establishing the invalidity of the written contract, which became a direct issue in the case. The amended answer denies that

the gasoline in question was purchased pursuant to the terms of the written contract which are set out in the complaint. On the contrary, it is therein alleged: "That all gasoline sold and delivered to defendants . . . was sold and delivered pursuant to the terms of an oral agreement made and entered into on said (1st) day of March, 1927, . . . upon the basis of six cents per gallon, less than the current retail price of gasoline, or what is commonly known as six cents differential." Respecting the invalidity of the written contract, the amended answer affirmatively recites: "That the alleged written agreement referred to in plaintiff's complaint was not signed, or executed or delivered by defendants as a binding contract between said parties, that it was distinctly understood and agreed by and between defendants and said . . . (plaintiff) that the provisions of said contract . . . would not be binding upon defendants, but that . . . all gasoline ordered or purchased by defendants, would be pursuant to the terms and conditions of the hereinabove mentioned oral agreement . . . on a six cent differential basis."

The trial court adopted findings favorable to the defendants upon the foregoing issue as to whether the gasoline was purchased pursuant to the oral contract or the alleged written agreement. It was found that the written agreement referred to in the complaint was executed by the parties, and that it provided for four cents discount per gallon "from the tank wagon price" thereof, and that 119,295 gallons of gasoline were delivered to the defendants for which the purchase price had not been paid. The court, however, further found that "Plaintiff did, up to March, 1928, allow defendants a five cent differential off of tank wagon price on the purchase and sale of gasoline." And further found: "That . . . the plaintiff and defendants did verbally agree that plaintiff would meet competition in price differentials and that the competition during the month of March or thereafter was six cents off tank wagon prices." And also found, "That defendants are entitled to receive a credit on said demand under plaintiff's first cause of action, of one cent per gallon."

There is substantial evidence to support the foregoing findings. Both Mr. Harris, who is one of the defendants, and J. E. Brenton, a former agent of the plaintiff, so testi-

fied. The following colloquy occurred during the examination of the last-mentioned witness: "Q. Did . . . Mr. Harris . . . tell you that the Union Oil Company . . . had offered a six cent differential? A. Yes sir. . . . Q. . . . After he told you the Union Oil Company had offered the six cent differential, and you told him you would meet competition, you meant your company would give him a six cent differential, didn't you? A. That is just what I meant." It satisfactorily appears that Mr. Brenton had the authority to make this agreement with the defendants. He testified: "Q. . . . Under whose authority did you make this statement to Mr. Harris? A. Mr. C. N. Herndon, who was the representative of this district at that time. And I was also told by other representatives we would meet competition." It also clearly appears there was an error in the date when this oral agreement to meet competition by allowing a six cent differential was actually made. This agreement occurred in March, 1927, and not in 1928. The following testimony was given in that regard: "Q. Mr. Brenton, since you testified yesterday in regard to the time when you had your arrangement with . . . Mr. Harris of the Berry Garage, to sell him gas at a six cent differential, have you refreshed your mind as to what year it really was? A. Yes sir. Q. What year was it? A. I told you yesterday sir, that the transaction took place in 1928, and it is my belief now I was in error; that transaction took place in 1927."

The intention of the parties to the effect that the written agreement was not to become binding, but upon the contrary, was executed to mislead other competing gasoline companies regarding the net price received by the plaintiff for its gasoline was testified to by Mr. Harris as follows: "Q. This contract is dated in the month of February, 1928; who brought the contract to you to sign? A. I think it was Mr. Brenton. . . . Q. Did you take any notice of the amount of differential allowed you by that contract at the time you signed it? . . . Now, what was said by you, if anything? A. I said 'how is this, it only has four cents'; he says: 'well, that is all right, we don't want the other companies, such as the major companies to know what we are paying.' Q. What they were paying you? A. What differential I am getting, yes; he says, ' . . . they (the written contracts) are really just to show in case they are needed with the other

major companies, we can always show that you are only getting four cents, and other moneys, such as the extra rebate, will be given to you by check.' Q. Did you receive rebates by check after this time? A. Yes sir.''

This furnishes substantial evidence in support of the judgment to the effect that the written contract was not intended by the parties to be controlling with regard to the price of the gasoline which was to be paid, but upon the contrary that it was executed to deceive other competing gasoline companies regarding the price which the plaintiff was receiving for gasoline. This theory is corroborated by the fact that one cent per gallon, in addition to the discount which is provided for by the terms of the written agreement was actually paid to the defendants by the plaintiff.

 Under proper pleadings, oral evidence is competent to prove that a purported written contract was executed as a mere artifice to affect the relationship or conduct of third parties, and that it was mutually understood between the contracting parties that it was not intended to become binding upon them. Under such circumstances the reception of oral evidence does not have the effect of varying the terms of the written instrument, but rather tends to prove the invalidity of the challenged document. For this purpose it is competent. (*Smith* v. *Muller,* 201 Cal. 219 [256 Pac. 411].)

In the case last cited the court says:

''Evidence that parties never intended a writing to constitute a contract, but that in lieu thereof another contract was entered into between them, is not objectionable under the parol evidence rule. Such evidence does not change a written contract by parol, but serves to establish that such contract had no force, efficacy, or effect.''

 The court failed to adopt a specific finding to the effect that the written contract was intended by the parties to be inoperative and void. But the court did find that the defendants were entitled to the discount of six cents per gallon as provided by the oral agreement, and rendered judgment accordingly. In support of the findings which the court did adopt and the judgment which was rendered, it must necessarily be inferred the written contract was deemed to be invalid. The oral agreement and the written contract are in irreconcilable conflict. In view of the findings which

were adopted by the court, a specific determination of the validity of the written contract would have necessarily been adverse to the appellant. Under such circumstances the omission to specifically find that the written contract is invalid, is not reversible error. (*Phillips* v. *Stark*, 65 Cal. App. 136 [223 Pac. 443]; *Hulen* v. *Stuart*, 191 Cal. 562, 572 [217 Pac. 750]; 24 Cal. Jur. 944, sec. 188.)

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.