[Civ. No. 10432. First Appellate District, Division One.—November 18, 1937.]

COOPERATIVE DAIRYMEN'S LEAGUE (a Corporation), Appellant, v. HANS HANSEN et al., Respondents.

494

Decoto & St. Sure and Lafayette J. Smallpage for Appellant.

Carleton L. Rank for Respondents.

THE COURT.—An appeal by the plaintiff from a judgment entered in favor of the defendants.

Plaintiff (which will be hereinafter referred to as the league) is a nonprofit cooperative corporation composed of dairymen producing milk for sale in Alameda County, and the defendants are copartners engaged in the dairy business in that county. The league was incorporated in 1925, its purpose being to market the milk produced by its members, to the end that uniform prices might be obtained and the income proportionately distributed. Following its incorporation, by-laws were adopted and officers and directors were elected. Public meetings were held with the object of inducing dairymen to join the organization. In June, 1926, such a meeting was held in the town of Newark, at which the league's general manager presided and the defendants were present. The defendants were at this time under contract to sell all their product to another dealer, and this contract, at the option of the latter, had several years to run. This fact was discussed; and there was evidence of an understanding that although these defendants would be unable to deliver their milk to the league during the term of the existing contract, they being the largest producers of milk in the locality, their identification with the league would have the effect of inducing others to join and thus strengthen the organization. Defendants' existing contract provided that they should receive the current wholesale price for their milk; and it is admitted that the success of the league would tend to increase or maintain current prices. At the meeting mentioned defendants signed a membership contract; but it was testified that it was verbally agreed that this should not take effect until the expiration of the existing contract. It was agreed, however, that they should pay the regular dues as members of the league. The trial court so found; and although there was evidence of defendants' participation in the management of the league's affairs thereafter, which tended to show that they became members at the time, nevertheless the conclusion of the trial court is fairly sustained.

In this connection plaintiff contends in effect that defendants, by the provisions of their existing contract, were not obligated to deliver their product from year to year. But one paragraph of this contract was placed in evidence, the material portion of which reads as follows: "As a further

consideration for the execution of this agreement by the vendor vendees jointly and severally covenant and agree to and with vendor that vendees and each of them will for and during the period of twenty years from and after the date of this agreement deliver to vendor daily at vendor's option all or such portion as vendor may desire of the milk produced from any dairy or dairies operated by the vendees or any of them. . . . Vendor shall, on or before May 1st of each year, exercise such option as to the amount of milk which he shall purchase from the vendees during the twelve months period immediately following June first of such year.''

It is the rule that a promise which by its terms may be performed without detriment to the promisor or benefit to the promisee is insufficient as a consideration. While under the quoted portion of the paragraph it was optional with the dealer to purchase the milk he might desire from year to year, and this standing alone might be held to be an insufficient consideration, and that therefore the defendants would not be bound, nevertheless the paragraph recites that there existed an additional consideration for defendants' promises. What this was in fact does not appear. However, this statement, while not conclusive, is evidence of a fact which supports the conclusion of the trial court. (Williston on Contracts, 2d ed., sec. 115b; *Whitney* v. *Stearns,* 16 Me. 394; *Frunk* v. *Irgins,* 27 Minn. 43 [6 N. W. 380] ; *Thrall* v. *Newell,* 19 Vt. 202 [47 Am. Dec. 682] ; *National Hardware Co.* v. *Sherwood,* 165 Cal. 1 [130 Pac. 881] ; 13 C. J., Contracts, sec. 183, p. 336; Civ. Code, sec. 1615.)

The situation which led to the present litigation arose in 1930. It was then found that more milk was being produced than could be sold as ''grade A market milk''—this being the milk sold for human consumption as distinguished from that sold for manufacturing purposes, which brought a lower price. Under its accounting system the league credited each member for all the milk delivered at the grade A market milk price. It thereafter became necessary to charge against each account the proportion of the difference between this price and that obtained for manufacturing purposes. As defendants' milk was not sold through the league no charges were entered on its books against them as in the case of other members; but it was testified that after the

adoption of this system they voluntarily paid the league one-half cent for each gallon of milk sold by them, the purpose being to help equalize the difference in the amount received by the other members due to the lower price at which their surplus milk was marketed. It is claimed that this payment by the defendants of one-half cent per gallon did not equal the proportionate deductions from the credits given the other members, and the present action was brought to recover this difference.

Several of the league's officers testified that the question of the defendants' relations with the organization was discussed at its meetings during this period, and that it was the opinion of the officers that it would be to the advantage of the league not to claim from the defendants a proportion of the so-called loss as, in that event, they might arrange to ship their product through the league, thus causing a greater surplus of milk, and that the arrangement described should continue.

It is contended that the meeting at which the defendants signed a membership card was not duly called or held, and that consequently nothing which was then agreed to would bind the. league. However, a subsequent resolution was adopted. by the members ratifying and approving the preceding acts of the directors and officers; and there is sufficient to show throughout the whole transaction, which covered a long period, that the course pursued was approved by the officers of the league. Evidence, which the trial court believed, sufficiently supports the conclusion that defendants never became obligated otherwise than as found by the trial court. The facts are closely analogous to those in the case of *P. A. Smith Co.* v. *Muller,* 201 Cal. 219 [256 Pac. 411], and the principles there applied should control. (See, also, *Texas Co.* v. *Berry Garage,* 121 Cal. App. 455 [9 Pac. (2d) 241].)

The further claim is made that plaintiff should have recovered for certain unpaid dues, but the evidence shows that these were paid.

In addition it is urged that the defendants are liable for a penalty imposed upon the members for milk delivered which contained an excess bacterial count. However, there is no evidence that the defendants promised to pay; and in view of the evidence and the finding that defendants did not be-

come members the court's finding against this contention must be sustained.

We are satisfied that no ground for reversal' has been shown; and the judgment is accordingly affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 18, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 17, 1938.