MUSKEGON STEAMSHIP CORPORATION, Respondent, *v.* PLINY FISK and Others, Appellants.

First Department, April 7, 1922.

Sales — action by seller after breach by buyer to recover money deposited with third person on purchase price of ship — implied promise of third person enforcible — sale made subject to general requisition by government — contract could not be repudiated because of misunderstanding by buyer of effect of requisition — tender made was sufficient — amount deposited constituted liquidated damages and not penalty — when distinction between liquidated damages and penalty not applicable — judicial notice that second-hand steamship during war had no regular market value.

Where a buyer deposits with a third person a part of the purchase price of a ship under a contract which provides in effect that should any part of the purchase money not be paid as prescribed in the contract then the amount deposited shall belong to the seller as liquidated damages and not as a penalty, an implied promise on the part of the third person exists to make payment to the seller on the happening of the contingency, which promise the seller may enforce.

In an action to recover money deposited with the defendants under a contract for the sale of a steamship it appeared that the seller warranted that the ship was free from liens and incumbrances except the general order of requisition made by the United States Shipping Board; that the contract, which was entered

into on the 11th day of January, 1918, did not specify any date for delivery; that the buyer repudiated the contract on the twenty-fifth day of the same month; that at the time the contract was entered into the steamship was subject to the general order of requisition issued by the United States Shipping Board; that on the eleventh day of February the ship was tendered to the buyer by the plaintiff, together with all necessary papers to make a good tender, though before that time the buyer had repudiated the contract, and that no action was taken by the United States government except in pursuance of said general order of requisition.

*Held,* that the buyer having made his contract subject to the general requisition by the United States Shipping Board, he will be presumed to know what that requisition was and, without any fraudulent statement on the part of the seller, the buyer cannot claim immunity from his liability on the ground that he did not understand what he was contracting for; that the seller tendered to the buyer the title he contracted to give to him and that the repudiation of the contract by the buyer was not justified.

Where a part of the purchase price paid on a contract for the sale of the ship is deposited with a third person and it is provided in the contract that in case of default on the part of the buyer to complete the contract said sum so deposited shall be considered as liquidated damages, the rule of distinction between liquidated damages and penalty does not become applicable and, therefore, the plaintiff, on the repudiation of the contract by the buyer, was entitled to the amount deposited under the contract and was not confined to the actual damages suffered.

However, if in such case the rule governing liquidated damages and penalty be applied, the court will take judicial notice of the fact that a second-hand steamship during the war times of 1918 had no regular market value and, therefore, the stipulation that the sum so deposited should be liquidated damages and not a penalty is enforcible.

APPEAL by the defendants, Pliny Fisk and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of November, 1920, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the same day denying defendants' motion for a new trial made upon the minutes.

*Martin W. Littleton* of counsel [*Owen N. Brown* with him on the brief], for the appellants.

*Duer & Taylor* [*Robert S. Johnstone* of counsel; *Leland B. Duer* and *George Winship Taylor* with him on the brief], for the respondent.

SMITH, J.:

The action is brought upon a contract of sale by the plaintiff to one Marskey, of the steamship *Muskegon.* In the contract the seller, plaintiff, warranted that the steamer *Muskegon* was of 5,660 tons dead weight capacity; that she was seaworthy and classed 100 A1 Lloyds; that she was free of liens or incumbrances of any kind, *except the general order of requisition made by the United States Shipping Board.* Upon the question of payment the provisions are as follows:

" III. The purchase price of the said vessel is agreed as follows:

One million, two hundred and forty-five thousand, two hundred dollars ($1,245,200), whereof 10% to wit, One hundred and twenty-four thousand, five hundred and twenty dollars ($124,520), has been deposited or will, contemporaneously with the execution of this contract, be deposited with Harvey Fisk & Sons, Bankers in the City of New York, to be paid to the seller by said bankers at the time of tender of proper bill of sale by the seller and tender of delivery of the vessel as hereinafter provided and whereof the remainder shall be deposited with said bankers to be by them paid over to the seller at the same time.

" VI. On the payment of the whole of the purchase money and tender of proper bill of sale and of delivery of said steamer, said steamer is by the buyer to be taken and all belonging to her on board, with all faults, errors of description in advertising, circulars, inventories or otherwise. Should any part of the purchase money not be paid as above provided, the 10% payment above stipulated shall belong to the seller as liquidated damages and not as a penalty."

Thereafter the steamer *Muskegon* on the way from Boston to Norfolk ran into a gale and was damaged, one of the shafts being broken. She was towed into port, the shaft immediately fixed, and about the thirteenth day of February she was tendered to Marskey by the plaintiff with the certificate of Lloyds as prescribed and all necessary papers to make a good tender. Prior to that time, however, Marskey had repudiated the contract so that the tender in any event became unnecessary. Upon the refusal of Marskey to complete the purchase the plaintiff made claim to this deposit with Harvey Fisk & Son, and upon their refusal to pay over the sum, has brought this action therefor.

There is no claim here made by the appellant that any delay caused by the repair of the steamer was a cause for forfeiture of the contract, nor could it well have been. There was no specific time mentioned in the contract for the delivery and she was to be delivered as soon as possible upon her return, and the sale was made subject to the perils of the sea, and this was one of them. The judgment is not challenged on this ground. It is claimed that there was no promise on the part of the defendants to pay this deposit money to the plaintiff, but the moneys were delivered under the contract. The contract provided for the forfeiture of these moneys to the plaintiff in case of the default of the purchaser. There was, therefore, clearly an implied promise to make payment to the seller which the seller may enforce by action. It is claimed further, that this boat was subject to a special incumbrance by a special requisition of the government. There is no proof of this.

The general order of requisition was issued on October 12, 1917, and reads as follows:    " United States Shipping Board

" Washington, *October* 12, 1917.

" The United States Shipping Board hereby gives notice to all owners of ships registered and enrolled under the laws of the United States that the requisition of all American steamers described below and of which previous announcement has been made, will become operative and effective on October 15, 1917, at noon.

" 1. The ships affected by said requsition and included therein are

" (a) All cargo ships able to carry not less than 2,500 tons total deadweight, including bunkers, water and stores.

" (b) All passenger steamers of not less than 2,500 tons gross register.

" 2. (a) As to all steamers in or bound to American ports on October 15, 1917, requisition becomes effective after discharge of inward cargo and ship is put in ordinary good condition.

" (b) As to steamers which have started to load their outward cargo, requisition becomes effective at noon on October 15, 1917, and accounts as to hire and expenses will be adjusted from time steamer began to load.

" 3. Steamers trading to and from American ports, that have sailed on their voyage prior to October 15, 1917, at noon, are to complete that voyage as promptly as possible and report for requisitioning.

" 4. Steamers that are occupied in trades between foreign ports shall be requisitioned as of October 15, 1917, at noon, and accounts adjusted accordingly.

" 5. (a) Owners, whose steamers are operating in their regular trades, are to continue the operation of their steamers for account of the Government, as they have been been doing for themselves, until they receive further instructions.

" (b) Owners whose steamers are chartered to others will apply to the Shipping Board for instructions regarding the future employment of said steamers.

" (Signed) BAINBRIDGE COLBY, *Commissioner.*"

This boat was then in the south. Upon its trip north it arrived in New Orleans on December 7, 1917. Under this general order of requisition all of these boats came under the control of the government on October fifteenth. There was a special requisition of this boat upon August 23, 1917, which was revoked on August

twenty-ninth. This contract was not made until January 11, 1918. The repudiation was upon January twenty-fifth. It is quite likely that Marskey did not understand the force of this general requisition order. There is no claim, however, of any misrepresentation, and there cannot be claimed any fraudulent concealment of facts, nor was there any mutual mistake of facts. It is quite likely that Marskey understood, as he claims now, that he would have the boat for several trips before it would be actually taken over by the government, but, having made this contract subject to this general requisition, he is presumed to know what that requisition was, and, without any fraudulent statement on the part of the seller, Marskey cannot claim immunity from his liability under the contract because he did not understand what he was contracting for. There was no claim made for the ship by the government which was not made under the general requisition order. A charter was issued to the government upon March eighteenth after the contract had been repudiated by Marskey and it was deemed to have related back to December seventh. But that was all done under this general requisition order, and moreover, as far as there be any force to the contention as to the existence of any special claim upon the ship, that charter cannot relate back to December seventh. It is true that some allowance was paid by the government from December seventh, but there was no special lien that was not created under the general requisition order dated October twelfth. In fact, the steamer was not taken over by the government for its own use until after March, 1918, and there was no claim made by the government of any right prior to that time, except such rights as it acquired under the original issuance of the general requisition order. I think, therefore, that the plaintiff has tendered to Marskey the title he contracted to give to him and that the repudiation by Marskey for the reason assigned was not justified.

The money sued for was given to Harvey Fisk & Sons as part of the purchase price, and it is provided that it should be forfeited in case Marskey did not perform his contract. It is now claimed by the defendants that this deposit was not liquidated damages, but was a penalty and that the plaintiff ought only to recover the amount which it shows to have been its actual damage. But the parties stipulated that it was liquidated damages and not a penalty. It was part of the purchase price paid, and where it is thus provided as to the moneys paid upon the contract, the rule of distinction between liquidated damages and penalty does not become applicable, and the plaintiff is not confined to the actual damage suffered.

40

Authorities to this effect are cited in the opinion written by Mr. Justice CLARKE in *Beveridge v. West Side Construction Co.* (130 App. Div. 139). The cases cited to the contrary are those where a deposit was made of moneys simply as security. It is true that the plaintiff alleges that this money was deposited with the defendants as security for the performance of the contract. But the contract also is made a part of the complaint, and the purpose of the payment is there shown to have been as part of the purchase price. It is always true, as matter of fact, that these advance payments of part of the purchase money are made as security for the performance of the contract but they are not subject to the rule governing recovery of penalties and liquidated damages. (*Howe v. Smith,* L. R. 27 Ch. Div. 89; *Soper v. Arnold,* L. R. 14 App. Cas. 429; *Sprague v. Booth,* L. R. [1909] App. Cas. 576; 25 Halsbury's Laws of England, 398; *Willson v. Mayor,* 83 Md. 203; *Donahue v. Parkman,* 161 Mass. 412; *Moore v. Durnam,* 63 N. J. Eq. 96.) And it matters not whether the deposit be paid to the seller direct or made with a third party as stakeholder. (*Donahue v. Parkman, supra;* 25 Halsbury's Laws of England, 398; *Citizens Bank v. Davisson,* 229 U. S. 212; *Hall v. Burnell,* L. R. [1911] 2 Ch. Div. 551.)

But even if this be subject to the rule governing liquidated damages and a penalty, it is clear to my mind that the court will take judicial notice of the fact that a second-hand steamer in the war times of 1918 had no regular market value, so that the stipulation that this should be liquidated damages and not a penalty will be enforced, and such a stipulation would naturally in such times, with the rapid fluctuations, work fully as much for the protection of the buyer as for the seller. If, by reason of scarcity of vessels, the prices had gone up, the seller would have been quite content, when the buyer repudiated his contract, to have had the damages liquidated to the amount of the deposit.

The judgment and order should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Judgment and order affirmed, with costs.