### In re A. C. HOTEL CO.

### BURMEISTER et al. v. A. C. HOTEL CO.

#### Nos. 6291, 6300.

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1937.

842

Samuel Goldenberg, of Milwaukee, Wis., for appellants.

Charles F. Puls, Jr., of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal is unique in that there is no opposition to the relief sought by the appellants, whose amended plan of reorganization was rejected by the court though favored by substantially all of the security holders.

Two appeals, one allowed by the District Court and one by this court, seek a reconsideration of the proposed plan and its approval is asked because it is not only the best possible plan that has been presented, but it carries the approval of security holders interested therein. The attorney for the debtor seemingly acquiesces in this statement, or at least has indicated no opposition to the merits of the plan or to its adoption. The only parties vitally interested who have appeared are the appellants who are members of a committee representing a substantial number of first mortgage bondholders and junior creditors.

The debtor is a Wisconsin corporation which owns and operates a hotel in Milwaukee, Wisconsin. It holds title to real estate upon which an eight story apartment hotel has been erected which is fully furnished and equipped. Loaded with debts it was unable to meet its obligations and foreclosure of a mortgage on it was instituted in the state court. A foreclosure decree followed. Debtor filed its petition under 77B in the United States District Court where it was considered and approved as properly filed. This was in 1936.

One plan of reorganization was submitted, but it failed to secure the court's approval. An amended plan was thereupon presented, which is the one before us. No objections to its adoption were made by any creditor, and it received the approval of the necessary percentage of security holders. The instant appeals are from the order of the court rejecting this plan, refusing leave to file modifications to the plan, and dismissing the proceedings.

The debt and financial structure of the debtor are as follows:

| | |
|---|---|
| First Mortgage 6% Real Estate *Gold* Bonds | $294,000.00 |
| Unpaid Interest thereon from July 26, 1931 | |
| Second Mortgage 7% Real Estate *Gold* Bonds | 70,000.00 |
| Interest upon said bonds at 7% from January 26, 1932. | |
| Accounts payable | 2,018.80 |
| Unpaid taxes from 1932 to 1935, inclusive | 30,000.00 |
| 50,000 shares of common stock of the par value of One Dollar. | |

Briefly stated, the plan of reorganization calls for the creation of a new corporation, a brief outline of which is as follows:

There shall be 4,200 shares of common stock, 2,940 Class A and 1,260 Class B. No preferred stock. Class A stock shall be issued to the owners of first mortgage bonds on the basis of one share of stock for each $100 par value of bonds. 700 shares of Class B common stock shall be delivered to the owners of second mortgage bonds on the basis of one share of stock for each $100 par value of bonds. 500 shares of Class B common stock shall be delivered to the holders of $50,000 of common stock of the debtor, one share of stock for each $100 par value of debtor's stock. One share of Class B stock shall be delivered for each $100 of unsecured indebtedness. Balance of Class B stock to remain unissued.

The rights of Class A and Class B stock are equal save that Class A stock alone has voting power. All of the assets of the debtor shall be assigned to the new corporation.

The new corporation shall issue a first lien mortgage sufficient to pay the taxes on the premises not exceeding the sum of $35,000. It shall also issue a second mortgage to secure bonds equal in face value to outstanding mortgage bonds—bond for bond. This mortgage shall mature in 1957 and interest is at 5%, noncumulative and is payable out of surplus net earnings only. Plan defines surplus net earnings. Interest on mortgage indebtedness cancelled in consideration of issuance of Class A stock in new company.

Appellants state that 95% of all the first mortgage bondholders who have filed their proofs of claim and 90% of the second mortgage bondholders who have filed their claims and 81% of the unsecured creditors who have filed their claims and 100% of the stockhloders who have filed their claims, have in writing approved the plan. *No security holder, either creditor or stockholder, has opposed the amended plan.* It does not appear how many bondholders or creditors voted, but it does appear that more than two-thirds of the outstanding first mortgage bondholders registered their written approval.

It also appears that the value of the assets of debtor does not exceed the amount of the first mortgage and outstanding taxes and that debtor is insolvent.

■ We fully agree with the District Court that a proposed plan, even though not opposed by a majority of the security holders, may be rejected regardless of the wishes of a large majority of the creditors. Even where the minority is silent, the plan may be so unfair or so impractical and visionary as to call for judicial rejection.

■■ However, the expressed preference of a large percentage of all claims of security holders interested in the property, especially if well considered and apparently intelligently reached, should not be lightly set aside. Proceedings under section 77B are for the benefit of security holders, particularly the creditors, if the debtor be insolvent. It is their property rights that are at stake. In ventures where large sums of money are borrowed and bonds are sold to the public there is difficulty in getting united, intelligent action on the part of widely scattered bondholders, many of whom are holders of but a few bonds. The Bankruptcy Law was amended to meet such a situation and to permit of effective action where two-thirds of the creditors of each class of claims favor it. Section 77B (e) (1), as amended, 11 U.S.C.A. § 207 (e) (1).

■ In the instant case the debtor, insolvent, with assets of a value less than first mortgage indebtedness, was quite helpless. A sale under the state foreclosure decree confronted the parties. All the security holders, evidently, were apprehensive over the likelihood of a serious or total loss through a sacrifice sale. The junior creditors and the stockholders might have reckoned with tolerable certainty that their loss would be a total one. Unless the first mortgage bondholders could unite, theirs, too, were likely to be serious.

The reorganization plan transferred the junior debts of debtor to stock of a new corporation, the future of which, though not alluring, appealed to the creditors as decidedly the more hopeful alternative. The proposed plan would wipe out the foreclosure decree and its disastrous possibilities, and culminates the bankruptcy proceedings into a plan which at least solves, for the day, the problems of the debtor.

It may be that the plan only postpones the day when hopes, bright with promise today, will be written down to cash realizations tomorrow. The fact remains, and it dominates the picture, that it is the debtor's and security holders' venture, and it is their only hope. Inasmuch as the various classes of security holders have agreed upon the ratios, that is, the percentages which each shall receive in the stock of the new company, it is hardly for a court to exercise its veto of the plan, even though it entertains a strong conviction that the mortgages of the new company will leave nothing for the stockholders.

In the last analysis the merits of the plan must be determined not on the basis of full payment, but rather on the assumption that a reality, cold and discouraging, confronts these creditors and they apparently find some comfort in the ever cheering, ever existing hope that tomorrow will be full of plentiful prosperity.

The case seems to us to be one where the court should have permitted the plan to go through and not exercised its veto.

The decree is reversed with directions to enter one approving the plan of reorganization.