## In re MICHIGAN–OHIO BUILDING CORPORATION.

### FELLHEIMER v. TOWNSEND et al.
#### No. 6452.

Circuit Court of Appeals, Seventh Circuit.
May 21, 1938.

Edgar J. Schoen, of Chicago, Ill., and John C. Love, of Milwaukee, Wis., for appellant.

Melvin M. Hawley and Roger Q. White, both of Chicago, Ill., for appellee Harold G. Townsend, etc.

Vincent O'Brien and John Merrill Baker, both of Chicago, Ill., for appellee Harriet M. Defrees, etc.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an appeal by the holder of $3,000 first mortgage building and leasehold bonds of the Michigan-Ohio Building Corporation from an order confirming a plan of reorganization in proceedings under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The assets of the debtor consist of two leasehold estates and an office building erected thereon, together with certain fixtures and equipment used in the operation thereof. There are outstanding bonds on the leaseholds and building in the principal amount of $840,500, with interest since July 1, 1932. In addition, defaults in payment of ground rent had occurred, aggregating about $56,000.

Appellant's objections to the plan, from the confirmation of which she appeals, are based on the fact that it unfairly discriminates in favor of the lessors who own the fee of the two parcels of land on which the building is erected. Appellees' answer to these objections is that since substantial defaults had occurred in payment of ground rents, the lessors were in a position to enforce forfeiture provisions of the lease, hence no plan could be adopted which did not meet with their approval, and the plan of which appellant complains represented the ultimate limit of concessions to which they were willing to agree.

In June, 1934, prior to the initiation of proceedings for reorganization under section 77B, the corporation lessee and two trustees entered into an agreement whereby, because of certain defaults in the covenants of the leases, the lessee assigned all subleases and rentals due thereunder to two trustees for the benefit of the lessors and delivered possession of the premises to them for the same purpose. The agreement was not signed by the lessors, and it expressly provided that acceptance of its benefits by the lessors should not operate as a waiver of any defaults existing then or thereafter, or as a waiver of any rights under their respective leases. In March, 1935, three creditors holding bonds aggregating $2,800 and interest accrued from January 1, 1932, amounting to $583, filed a petition for reorganization of the debtor under section 77B, and this petition was approved as filed in good faith in April, 1935. Thereafter, upon motion of the petitioning creditors, the trustees under the agreement of June, 1934, were allowed to remain in possession of the estate of the debtor, claims were classified, and a referee named to receive and report to the court all claims against the debtor, with any objections thereto. The court also ordered that a plan of reorganization be filed by October 10, 1935. Apparently no such plan was filed until after January 29, 1936, when the lessors filed an offer to modify their leases, which modified leases formed the basis for the plan which appellant complains discriminates unfairly in favor of the lessors. On the same date on which the plan was filed, a reorganization manager was appointed by the court on petition of the petitioning creditors.

The plan provides for the organization of a new corporation, no par value stock in which is to be distributed to the bondholders of the debtor, one share for each $100 of bonds. It reduces the terms of the ground leases from one hundred and eighty-five and eighty-six years respectively, to forty years from January 1, 1936. For that forty-year period it reduces the rental from an average of $37,562 a year to an average of $30,500 plus 50 per cent. of the net income. The other 50 per cent. of the net income is to be paid to the corporation. The plan further provides for the creation of two funds amounting to approximately $9,875 a year for four years, to cover replacements and a tax reserve, and $3,750 a year thereafter, and in case of default under the modified leases these funds are to be turned over to the lessors. Claims for defaulted rent amounting to $56,000 are to be released on payment to the lessors of $5,000 cash. The plan also provides for the appointment of a manager to be named by the lessors, who shall fix the amount of his salary which is, however, to be paid by the lessee, whose agent he is to be; this agent shall be subject to discharge by either of the lessors without the consent of the lessee, and to turn over books, records, and funds to lessors in case of such discharge. The plan also contains strict limitations upon the rights of the lessee in the matter of making subleases and collecting advance rentals, and provides that the lessee shall convey by bill of sale to the lessors all title to furniture, office equipment, and other personal property then owned by the lessee and located on the premises, or thereafter acquired from subtenants in payment of rent to the lessee.

Appellant denies that this plan represents any real concessions on the part of the lessors. While it does involve a release of the $56,000 defaults in rentals upon payment of $5,000 cash, the plan also turns over to them all personal property owned by the debtor, which appellant claims is of substantial value, and which would go for the benefit of the bondholders without this provision, since the lessors had no lien on it under the terms of the original leases. As to the reduction in the rentals for the remainder of the terms, appellant claims that that is met by the provisions for the setting up of the tax and replacement funds which are to inure to the benefit of the lessors, and for the payment of the additional rent of 50 per cent. of the

net income of the building. In view of the very substantial reduction in the terms of the leases, it is appellant's contention that the lessors will in fact benefit by the modification of the leases instead of contributing anything to the reorganization and rehabilitation of the debtor.

The lessors made it clear throughout the proceedings that they would make no further concessions, and in fact one of the two regretted having gone into the plan at all with their offer to modify, since it seemed possible that the plan would not work out and that ultimately they would be compelled to declare a forfeiture. The other lessor stated that she was interested in having the plan go through in order to avoid problems between the two lessors in case it became necessary for them to declare a forfeiture.

The court stated, in announcing his decision to confirm the plan, that the question was whether it offered the bondholders so little that it was worthless and made it a mockery to go through with it. He considered that he had only two alternatives, to approve this plan, since the lessors could be persuaded to make no further concessions, or to dismiss the proceeding. He thought that if he adopted the latter alternative, in all probability the vast majority of the bondholders would get absolutely nothing, and that the only ones who might get anything out of it would be the few who tried litigating in some other forum and thus developed some nuisance value which could not be available to any considerable number of them. Appellant argues that there were two additional alternatives which the court refused to consider, namely, the formulation of a plan of reorganization without the consent of the lessors, and liquidation in bankruptcy.

It is very difficult to understand appellant's theory as to these alleged alternatives. The leases provided that the rents reserved by the leases, and any taxes, assessments, or insurance, paid by the lessors, and any costs, attorneys' fees, and expenses which might be incurred by the lessors in enforcing the provisions of the leases or on account of any delinquencies of the lessee should be first liens upon any and all buildings on the leased premises, and upon the interest of the lessee in the leases and the premises. The leases further provided that if any default occurred in the payment of rents, and continued for a period of 45 days after notice of lessors to lessee in writing, lessors might, at their option, declare the

term ended and re-enter the premises; and that upon termination of the leases by lapse of time or otherwise, lessee would at once surrender the premises and all improvements thereon, and all buildings, fixtures and improvements then standing on the premises should belong to the lessors, and no compensation should be allowed or paid therefor.

■ It is true that the law does not look with favor upon forfeitures, and will avoid them wherever possible. See Illinois Merchants' Trust Co. v. Harvey, 335 Ill. 284, 167 N.E. 69, and cases there cited. Nevertheless, when the parties by their contracts provide for forfeiture upon default, and when substantial defaults occur, which there appears to be no hope of curing under the existing contracts, we are of the opinion that the court is powerless to afford relief from the effects of such defaults. Hence, we cannot agree with appellant's contention that a plan could be confirmed without the consent of lessors. They have done nothing to waive their right of forfeiture for defaults, and if they avail themselves of that right, there will remain nothing for the bondholders to reorganize. Their counsel stated at various times during the course of the hearings that it was their intention to declare the forfeiture, in fact, they asked for and secured leave to withdraw their offer to amend the leases unless the reorganization were consummated by August 12, 1937. Since the entire plan depended upon the lessors' refraining from the forfeiture of the leases, their withdrawal of their offer to amend inevitably spelled failure of reorganization, and if there were no reorganization, the bondholders as a group could not hope to salvage anything from their bonds. Thus the bondholders and the court were faced with cold, practical facts, and we cannot say that it was an error in judgment on the part of the former to consent to the plan. or on the part of the latter to confirm it, little as it in fact offered. Cf. In re A. C. Hotel Co., 7 Cir., 93 F.2d 841.

Appellant refers to the case, In re Barclay Park Corp., 90 F.2d 595, which also involved the reorganization of a leasehold estate, and where the Court of Appeals for the Second Circuit reversed an order confirming a plan of reorganization because it was held to discriminate unfairly in favor of stockholders who had no equity in the corporation, the reason for such discrimination apparently being that the lessor had announced that he would not consent to any plan unless the parties cooperated, and that the junior security holders must not be frozen out. The Court of Appeals held that there was no indication that the lessor insisted upon the particular terms of the plan adopted and refused to go through with any other. In that, the case differs from the one before us, for lessors here have made it abundantly clear that they will not make any further concessions. We agree with the District Court that no plan can be utilized for purposes of reorganization which does not meet with the approval of the lessors.

■ As to the other alternatives suggested, of dismissal of the proceedings, or of liquidation in bankruptcy, we see no reason why either should be adopted against the wishes of the majority who have signified their desire of attempting to work out the reorganization by means of the plan confirmed. If anything better could be formulated, there would be no reason for compelling the court to approve a plan just because the requisite number of creditors of each class consented to it. Cf. In re Granville & Winthrop Bldg. Corp., 7 Cir., 87 F.2d 101. But where, as here, it seems clear that nothing better can be formulated, and the plan has been consented to by 67½% of the bondholders, it would be unfair to them to dismiss the proceedings they think may result in some return of their investment, because a bondholder holding $3,000 of the $840,000 issue prefers to take her chances on dismissal of the proceedings or liquidation of the estate in bankruptcy.

■ Appellant assigns as error the admission of certain evidence regarding the income and expenditure of the debtor corporation from 1926 to 1936, objecting to the various exhibits for a variety of reasons such as that they were irrelevant, secondary, hearsay, or self-serving. The evidence in question consisted of certain tabulations and computations made up from books and audits of the corporation, and estimates for the years 1937 and 1938. These books and audits were available to the parties prior to the hearing, although they were not introduced in evidence. Appellant calls attention to certain alleged discrepancies in figures which appellees claim are to be explained by the fact that some of the statements were prepared on the accrual, and others on the cash basis. We agree with appellees that there was no necessity for a showing of exact figures, and that the computations and tabulations of-

fered were sufficient to acquaint the court fairly with the approximate income and disbursements, and that enough was shown to enable him to pass intelligently upon the plan. It was unnecessary to introduce the books and audits. The discrepancies of which appellant complains were not so serious as to warrant disapproval of the entire plan. Appellant admits that a good deal of latitude is allowed in the introduction of evidence in a case tried by a judge rather than before a jury, and that compilations of complicated book records, if properly identified, are admissible. She contends, however, that the record here shows that such latitude was exceeded. Our study of the record convinces us that it was not.

Appellant also complains that the plan is not feasible because under the Illinois statutes the reorganized corporation will not be able to pay any dividends other than liquidating dividends. Her contention is that since the only property of the reorganized corporation will be the leaseholds which will become valueless in forty years, it will be necessary to depreciate the capital value of the assets at the rate of 2½ per cent. a year. This being the case, she argues, section 41 of the Illinois Business Corporation Act, Ill.Rev.Stat.1937, c. 32, § 157.41, would prevent the payment of any dividends from income before depreciation, on which basis earning figures were presented to the court. However, appellees call attention to sections 59, 60, and 60a of the same Act, Ill.Rev.Stat.1937, c. 32, §§ 157.59, 157.60, 157.60a, providing for reduction of stated capital and paid-in surplus, and distribution of assets, which sections, they argue, are sufficient to permit the distributions here contemplated. Without discussion of the plan suggested by appellees under these sections of the Act, it is sufficient to state that we are of opinion that they do constitute a feasible means for the distributions planned.

Appellant also argues that the provision for the appointment of a manager by the lessors violates section 33 of the Corporation Act, Ill.Rev.Stat.1937, c. 32, § 157.33, which provides that the business and affairs of a corporation shall be managed by a board of directors. The District Court held that this did not prevent an owner from including as a condition to the making of a lease, that the lessee employ a certain agent, and we agree with this reasoning of the court.

Decree affirmed.