## UNIVERSAL JEWELRY CO., Inc., v. McIVER.

### No. 837.

Municipal Court of Appeals for the District of Columbia.

Argued July 25, 1949.

Decided Aug. 10, 1949.

Frank Paley, Washington, D. C. (Bertrand Bernath, Washington, D. C., on the brief), for appellant.

No appearance for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This is an appeal granted by us from a judgment of the Small Claims Branch of the Municipal Court.[1] The action was brought to recover a balance of $11.95 on the sale of a pair of shoes for $15. The sale was made on the street near defendant's home by an "outside salesman" of plaintiff. Defendant made a cash payment

[1] The jurisdiction of the Small Claims Branch is limited to civil actions wherein the amount claimed does not exceed $50. Code 1940, § 11—804. Appeals from that Branch may be granted on application. Code 1940, Supp. VI, § 11—772.

of $3 and signed by cross mark a paper entitled "conditional contract of sale" which provided that the balance be paid in weekly instalments of $1. None of the instalments were paid and this action was brought for the balance. Defendant was without counsel and at the suggestion of the court filed counterclaim for $3.

The evidence at the trial disclosed that the defendant is 65 years old and is married; that he is extremely nearsighted but is able to read and write a little; and that he works as a "coal hustler" and receives $18 a week when working. The evidence further showed that plaintiff approved the sale made by its salesman after a very limited credit investigation which disclosed nothing against defendant's credit and very little in favor of it. Defendant testified that this was the first purchase he had ever made on credit; that the salesman told him he could return the shoes if his wife did not approve the purchase; that when his wife saw the shoes she immediately advised him to return them; that finally, about seven or eight days later, he called plaintiff's store and reported he wished to return the shoes; that he never returned the shoes and no one came for them; and that he never wore the shoes but still had them.

The trial court, early in the trial, announced that the issues before it were: "First, does the Court have jurisdiction? Second, was it a business contract? Third, was it a gamble? Fourth, is the plaintiff grossly negligent? And, fifth, is there an attempt being made to use this Court for a purpose which is not contemplated by the statutes, the rules, or the decisions?"

At the conclusion of the testimony the court stated:

"I say that it is either a gamble or a terrifically poor business judgment to sell a fifteen-dollar pair of shoes to a coal hustler who makes $18 a week and who has a terrible affliction such as this. I do not think that the act creating this court, or the rules of court, or the rules of justice

generally, justify this Court in taking jurisdiction of this matter. I think this Court is without jurisdiction in this kind of a case.

"But going one step further, I think that the defendant made an honest effort to return these shoes. They are not unmerchantable, and I think you people should accept them back and give him his money back. * * *

\* \* \* \* \*

"There will be a finding for the defendant on the counterclaim, and the original claim is dismissed with prejudice."

Following some comment by plaintiff's counsel the Court said: "Well, I will answer that by making an additional finding of fact, that in my opinion this man is incapacitated by reason of his physical condition from making a contract."

 We think the trial court misconceived the law of the case. The court not only had jurisdiction of the action, it had exclusive jurisdiction and it was error to hold otherwise. There was no legal basis for designating the transaction as a gambling one not enforceable in court. Contracts growing out of gaming transactions are declared by law to be void,[2] but it is obvious that this transaction could not be deemed gaming within the meaning of the statute. And we know of no rule of law which says that one who sells on credit has no standing in court because he knew or should have known that the purchaser was a bad credit risk.

 There is no evidence in the record that the purchase was induced by fraud, misrepresentation or duress, or that the purchaser did not understand the transaction. He testified he saw the shoes, intended to buy them, and knew he was buying them, "but I used poor judgment." An improvident or extravagant purchase may not be rescinded simply because it is contrary to the dictates of good judgment.[3] "A court has no basis for relieving one party from contract provisions to which he has agreed, merely because they oper-

[2] Code 1940, § 16—701.

[3] 17 C.J.S., Contracts, § 417; 12 Am. Jur., Contracts, § 184; 9 Am.Jur., Cancellation of Instruments, §§ 11, 25.

ate disadvantageously as to him."[4] Distressing cases of apparent overcharges and overselling are often encountered, but we know of no remedy under existing law except that of education of the buying public.[5]

■■■ The finding of the trial court that defendant because of his physical condition was incapacitated from making a contract is not supported by the record. The only reference in the record to physical incapacity relates to defendant's eyesight. Although the trial court in one instance stated that defendant was blind, defendant himself said he was extremely nearsighted but could read some by holding the paper close to his eyes. Undoubtedly defendant has very poor eyesight but blindness or any other physical incapacity, not affecting mental capacity, does not render one incapable of making a contract.[6]

The only legal defense developed at the trial relates to defendant's testimony that the shoes were purchased on the condition that they could be returned and his money refunded if his wife did not approve the purchase. On this question the trial court made no express finding. The court did state it thought defendant made an honest effort to return the shoes and thought plaintiff should accept them and return defendant's money. However, it is not clear whether this statement was made on the basis of defendant's right to return the goods under the agreement or on the basis of other views expressed by the court.

■■■ A new trial must be ordered to determine the issue whether defendant purchased the shoes on the condition that he could return them, and, if so, whether within a reasonable time he made reasonable efforts to return them.

We think it appropriate to repeat the words of the late Chief Judge Richardson who, speaking for this Court, said that in creating the Small Claims Branch of the trial court "Congress did not intend to deprive litigants of their lawful claims or defenses, or to substitute the abstract conception of justice of an individual judge for recognized rules of substantive law."[7]

Reversed with instructions to award a new trial.

---

[4] Stinson v. New York Life Ins. Co., 83 U.S.App.D.C. 115, 117, 167 F.2d 233, 235.

[5] Exemptions of property and earnings from seizure for debt were liberalized by Congress in 1944. Code 1940, Supp. VI, §§ 15—401, 403. Rule 18A of the Small Claims Branch requires that the presiding judge inquire into the matter of the defendant's earnings and dependents to ascertain whether he is entitled to exemptions.

[6] Mead v. Gilbert, 170 Md. 592, 185 A. 668.

[7] Interstate Bankers Corporation v. Kennedy, D.C.Mun.App., 33 A.2d 165, 166.