**SIMMS et al. v. BOVEE.**

No. 846.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 15, 1949.

Decided Oct. 7, 1949.

Josiah Lyman, Washington, D. C., for appellants.

No appearance for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellee Bovee brought suit in the Small Claims and Conciliation Branch of Municipal Court for return of a deposit on a contract for the purchase of an automobile from Simms Motor Company. Bovee was awarded $50 and the motor company filed with us an application for appeal, which we granted.[1]

We have had to ascertain what the evidence was by recourse to (a) the facts stated in the application for appeal, (b) a certificate of the trial judge filed under our Rule 30 reciting that "the facts, issues, and rulings are sufficiently and correctly set forth in the application, as modified, supplemented or corrected" by his certificate, and (c) certain exhibits in the record.

Despite some conflict and uncertainties, we gather that the facts are as follows: On May 5, 1949, Bovee signed an agreement to purchase a used Pontiac convertible coupe from the Simms Company. The purchase order, which was in evidence, recites that the price was $275, on which Bovee made a $50 deposit. It appears that $50 more was payable May 21 and the balance was to be "cleared through Finance otherwise Deposit to be refunded."

On the same day, according to an order and receipt (but on May 6 according to a petty cash receipt), Bovee returned to the motor company and asked for a refund of the deposit, explaining that he was in need of the money for other purposes. The judge's certificate recites that "representations to this effect were made to the defendant who returned part of the deposit to plaintiff and at the same time sold him another cheaper automobile." The company returned $25 of the $50 deposit to Bovee and with his consent applied the remaining $25 to a new contract of sale, covering a different automobile.

---

1. Code 1940, Supp. VI, 11—772.

The new contract was in the form of an "Order for Used Car" and a cash receipt. By these Bovee engaged to purchase a Chevrolet sedan for $130, less the deposit of $25. The cash receipt reads:

"Received of Elmer W. Bovee
Twenty-five & no/100 Dollars
Deposit on 1934 Chev Eng. #00426311 Car #
Balance to be paid 3 pymts. of 2 wks apart   @ 35.00 per week starting
May 11, 1949 & ending June 8, 49
No deposit to be refunded if contract is cancelled.
Sold As Is"

It is also to be noted that the original order for the Pontiac contains the note: "VOID—see new purchase order—Returned $25.00 on this deposit."

Thus it appears that the original $50 deposit was returned to Bovee, half in cash and half by application to the purchase of the Chevrolet. On May 25 he paid $35 more on his contract, and thereafter made no further payments to the vendor. The application for appeal recites (and in these respects it is not altered or modified by the judge's certificate) that it was undisputed that after Bovee had paid in $100, the Simms company was to turn the car over to him, and that after he had paid the total purchase price they were to give him title; that on May 5, 1949 the Simms company "did withdraw from their saleable group and stock of used cars" the Chevrolet in question "and held the same for the disposition of Bovee; the applicants granted Bovee free storage until he obtained possession of the car." Elsewhere in the application it is recited that the dealer "set aside the car, and held the same always for Bovee," and that sometime after May 25, 1949, Bovee decided he would not go through with the contract and sought to abrogate it.

On June 13, 1949, Bovee filed suit in the small claims court "For return of deposit left with the defendants during May, 1949." His claim was for $60, on which he entered a voluntary credit or reduction of $10, in order to bring it within the $50 jurisdiction of the small claims branch. At the trial the facts above recited were brought out, and as we have said, the trial judge awarded judgment to plaintiff for the full amount of his claim. In his certificate the judge stated that the evidence clearly established two different transactions concerning two different automobiles. This is obviously correct. But there are other points as to which the judge's certificate is in conflict with the written exhibits in the case. The judge states that "defendants credited amounts paid as payments on the deposit on the first automobile which they declared forfeited. This suit was for the money deposited on the first automobile * * *." But the receipts in the record before us show that the $25 deposit and the subsequent installment of $35 were specifically for payments on the Chevrolet, the second car. Neither party contends that these payments were on account of the first contract which had already been rescinded and was no longer of any effect between them. And the record does not disclose that the defendants credited such payments on their books toward the first car. The written, undisputed evidence establishes the contrary. The trial judge based his decision, in part at least, on the theory that the second sale was "merely collateral to the case," and that plaintiff discovered that his "payments were credited toward forfeiture of deposit on first sale, which had been rescinded by mutual agreement." It is true, of course, that the first contract was mutually rescinded, with no further settlement to be made thereunder. That contract was at an end, and no action could have been brought upon it by either party. It was superseded by the second contract which expressly provided "no deposit to be refunded if contract is cancelled." It was in connection with the second contract that the purchaser made the payments of $25 and $35. Hence it cannot be said that the second contract was "merely collateral to the case." It actually furnished the basis of the ultimate issues in suit.

We think it clear that the motor company had every right, legal and equitable, to retain the money paid toward the purchase of the second (Chevrolet) automobile, as expressly provided in writing, and that it was error to rule otherwise. No showing of fraud, duress, or mistake was presented at the trial, and as we have recently held, courts have no right to relieve parties to contracts merely because certain provisions may operate disadvantageously to them.[2]

We do not overlook the general rule that the law does not favor forfeitures. But we note that in this jurisdiction it has been held that parties to a contract may agree in advance to damages for breach of contract without reference to the actual damages found at the time of the breach, and that only when such agreement provides for a penalty is it void or unenforceable.[3] And in the case before us there was nothing to show that the provision was for a penalty; nor did the trial judge so hold.

As we view the matter, this contract provided for liquidated damages, even though not expressly stated as such.[4] Nor does it come within the general tests set out by the courts as converting such a stipulation into a penalty. There was no evidence of any circumstances which would make this provision "grossly excessive," "unjust and oppressive," "unreasonable," "extravagant" or "disproportionate" as a matter of law. Rather it seems to meet the common qualifications since "it may fairly be allowed as compensation for the breach." [5]

There is no doubt that it was the purchaser alone who breached the contract, and that such breach was without legal cause or justification, the vendor being at all times ready to perform. That being so, the law is clear, as enunciated by many decisions that the purchaser had no right to demand the return of the payments he had made.[6]

Reversed, with instruction to enter judgment for defendants.

2. Universal Jewelry Co., Inc. v. McIver, D.C.Mun.App., 68 A.2d 226.

3. Davy v. Crawford, 79 U.S.App.D.C. 375, 376, 147 F.2d 574, citing: District of Columbia v. Harlan & Hollingsworth Co., 30 App.D.C. 270; Barnette v. Sayers, 53 App.D.C. 169, 289 F. 567; 3 Williston, Contracts; Rev.Ed.1936, § 779.

4. The use of such words as "forfeiture," "penalty," and "liquidated damages" are not conclusive. Rather their nature is determined by the subject matter of the agreement, the meaning and intent of the parties as expressed in the contract, and the terms used to express that intent. District of Columbia v. Harlan & Hollingsworth Co., supra. See also: Massman Const. Co. v. City Council of Greenville, Miss., 5 Cir., 147 F.2d 925.

5. 1 Sedgwick, Damages, 9th Ed. § 407; see also In re Michigan-Ohio Building Corporation, 7 Cir., 97 F.2d 845; appeal dismissed 117 F.2d 191; 12 Am.Jur., Contracts, § 435; Restatement, Contracts, § 339. We note that our Code, 28—1502, outlines the measure of damages when a seller sues for damages. Here of course the action was by the buyer.

6. In re Oscar Nebel Co., 3 Cir., 117 F.2d 326; Kaufmann v. Baldridge, 10 Cir., 162 F.2d 793; Waldman v. Greenberg, 265 App.Div. 827, 37 N.Y.S.2d 565; Muskegon S. S. Corporation v. Fisk, 200 App.Div. 621, 193 N.Y.S. 463; Flynn v. International Motor Co., 129 Misc. 211, 221 N.Y.S. 113; Genovese v. A. Lenobel, Inc., 154 Misc. 91, 275 N.Y.S. 521; Scott v. Ralph Horgan, Inc., Sup.App.T., 36 N.Y.S.2d 822; Pirman v. Kurtz, 267 App.Div. 258, 45 N.Y.S.2d 508; Lynn v. Bloom, Sup.App.T., 55 N.Y.S.2d 293; Tomboy Gold & Copper Co. v. Marks, 185 Cal. 336, 197 P. 94; Arkelian v. National Bank of Visalia, 103 Cal.App. 764, 284 P. 933; Foss-Hughes Co. v. Norman, 2 W.W.Harr. 108, 119 A. 854; Burns v. Hunter, 126 Kan. 736, 271 P. 398; Ellinghouse v. Hansen Packing Co., 66 Mont. 444, 213 P. 1087; Katz v. Katz, 134 N.J.L. 303, 47 A.2d 423; Humphrey v. Sagouspe, 50 Nev. 157, 254 P. 1074; Bell v. Lammon, 51 N.M. 113, 179 P.2d 757; Livesley v. Strauss, 104 Or. 356, 206 P. 850, 207 P. 1095; Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co., 289 Pa. 569, 137 A. 807; Schneider v. Allis-Chalmers Mfg. Co., 196 Wis. 56, 219 N. W. 370.