Irving BERG, Appellant,

v.

Samuel SLAFF, Appellee.

No. 1838.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 20, 1956.

Decided Oct. 12, 1956.

Herman Miller, Washington, D. C., for appellant.

Alvin L. Newmyer, Jr., Washington, D. C., for appellee.

Before ROVER, Chief Judge, HOOD, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

HOOD, Associate Judge.

Appellant tenant brought suit to recover from appellee landlord the balance of a deposit given to the landlord to insure the faithful performance of a lease entered into between the parties on March 23, 1949. The amount deposited by the tenant was $900 and the lease provided:

"The Lessee has this day deposited with the Lessor a check for Nine Hundred Dollars ($900.). The proceeds of said check shall be security for the faithful performance of and compliance with all the terms, covenants and conditions of this lease. It is expressly understood and agreed that, if the Lessee fail to comply with each of the terms, covenants and conditions hereof, or surrender or abandon the said premises without written consent of the Lessor, or if the Lessee be dispossessed therefrom, then and in any such event the sum herein deposited as aforesaid shall belong to the Lessor as part payment of the expense that the Lessor may incur for regaining possession of the said premises and redecorating, repairing and reletting the same, and the same shall not be considered as payment for any rent due, or to become due hereunder, or in any manner releasing the said Lessee from any liability to perform the covenants of this lease. If all of the terms, covenants and conditions be fully complied with by the Lessee, the said security shall be returned to the Lessee at the end of the period hereinbefore first mentioned as the demised term."

The lease was for a three-year term, but prior to its expiration the parties agreed to an extension until March 31, 1954. On that date the tenant failed to vacate and the landlord sued for possession. Judgment for possession was obtained, but execution was stayed by agreement of counsel until June 15, 1954. The agreement, in the form of a praecipe, directed the Clerk to enter a judgment for possession as of April 19, 1954, "with stay of execution until June 15, '54 and without waiver of any legal rights of landlord, tenant will pay monthly rent of $250. to landlord for months of April, May, 1954 and $125 for rent from June 1 to June 15, 1954. The aforesaid rent for April will be paid the landlord forthwith; the balance will be deducted by the landlord from the $900. deposit described in lease, now held by the landlord. As consideration for this agreement, tenant waives all defenses, demands for jury trials and appeals, except a separate action if necessary, to recover any portion of the deposit, * * *."

Pursuant to this agreement the tenant paid rent for April and the landlord applied $375 of the $900 security deposit to the rent for May and June. The tenant vacated on June 13, 1954, and thereafter brought this suit to recover the remaining $525 of the deposit.

The trial court denied recovery, ruling that "the deposit was not a penalty, but it bore an actual relationship to the damages incurred by the Lessor." If by this ruling the trial court held that the lease provision above quoted provided for liquidated damages in the amount of the deposit in the

event of a breach, then we think the court was in error.

■ Although it is settled in this jurisdiction that parties to a contract may stipulate in advance the damages to be paid upon breach [1] the courts have always been reluctant to enforce forfeitures.[2] Where actual damages are easily ascertainable, and the stipulated sum appears grossly disproportionate thereto, courts will usually construe the agreement as a penalty and declare it to be void and unenforceable.[3] Of primary importance is the intention of the parties as reflected by the language they employ, and even should the stipulated sum not be disproportionate to the actual damages, if it is readily seen that the parties did not intend the agreement to be one for liquidated damages, such intention will prevail. This does not mean the mere use or nonuse of the term "liquidated damages" is controlling; as in any contract the intention of the parties is determined by examining the instrument as a whole.[4]

■ In examining the security deposit provision of the lease, language is found which strongly suggests that the parties intended to treat the deposit as an indemnification sum. Upon breach by the tenant of any covenant, condition, or term, the landlord was entitled to apply the deposit as "part payment" for certain specific expenses incurred by the landlord because of the breach. It would seem to logically follow that if the expenses incurred as a result of the breach did not exceed the amount of the deposit, then at the termination of the lease the parties intended that the balance of the deposit be returned to the tenant.[5] But what if the damages incurred by the landlord exceeded the sum deposited by the tenant? Under such circumstances and under the wording of the provision, could he not claim that he is entitled to the deficiency? It will be observed that nowhere in the provision did the parties refer to the deposit as being one for liquidated damages, and although, as stated before, the use or nonuse of that term is not controlling, its absence viewed together with the language of the provision leads us to the conclusion that liquidated damages were not intended.

■ The landlord contends that even should the provision be construed as a penalty and not one for liquidated damages, the damages he incurred by reason of tenant's failure to vacate far exceeded the amount of the deposit and therefore he was entitled to its retention. Generally, the measure of damages for the unlawful detention of leased premises is the fair and reasonable rental value of the property for the time it is wrongfully withheld.[6] Since landlord agreed to permit tenant to remain in possession until June 15, 1954, and the stipulated rent up to and including that date was paid, he has suffered no damages unless he proved special damages.[7]

1. Simms v. Bovee, D.C.Mun.App., 68 A.2d 800, and cases cited therein

2. 25 C.J.S., Damages, § 102(b); Simms v. Bovee, supra note 1.

3. See Barnette v. Sayers, 53 App.D.C. 169, 289 F. 567; Davy v. Crawford, 79 U.S.App.D.C. 375, 147 F.2d 574.

4. Davy v. Crawford, supra note 3; Schwartz v. Rettger, D.C.Mun.App., 83 A.2d 279.

5. See McConnell v. Beach Realty Co., 128 N.J.L. 493, 27 A.2d 195, where without discussion a security deposit was treated as an indemnification sum rather than as liquidated damages.

6. 51 C.J.S., Landlord and Tenant, § 316(c).

7. Annotation, 32 A.L.R.2d 582.

The record shows that the landlord claimed the unlawful detention resulted in the loss of "the whole rental season" and that he was not able to rerent the premises until "either the middle of September or the middle of October." Apparently his contention is that if tenant had vacated on March 31, the last day of the rental term, the property in all probability could have been rerented, but since the tenant did not vacate until the middle of June, which is a poor renting month, he was unable to find another tenant and lost rental income for the entire summer. A claim for damages based on this contention is tenuous. The landlord, having agreed to permit the tenant to remain in possession until the middle of June, admittedly a poor renting month, is in no position to claim that the tenant's continued occupancy until June 13th, has caused substantial injury for which he is entitled to be recompensed. This is true, in spite of the fact that the landlord when entering into the agreement with the tenant, reserved all his legal rights under the lease. According to landlord's testimony the property *probably* could have been rented if it had been vacant either in April or May. Whether the landlord could actually have succeeded in renting the property is impossible to say, but in addition to the speculative nature of the claim, there remains the fact that the landlord agreed that the tenant remain in possession until June 15. He cannot complain that he was damaged by his own agreement to allow tenant to stay until that date.

The landlord did show that there was an expenditure of $100 in bringing the action for possession. This expenditure was the direct result of tenant's unlawful holding over and landlord is entitled under the terms of the lease to apply the security deposit to this outlay. The remainder of the deposit amounting to $425 should be returned to tenant.

Reversed with instructions to enter judgment for plaintiff for $425.